Rosa Evergreen (DC Bar # 500227)
Anna K. Thompson (DC Bar # 989038)
Blake Biles (DC Bar # 441679)
Matthew T. Scarvie (DC Bar #1618817)
Arnold & Porter Kay Scholer LLP
601 Massachusetts Avenue NW
Washington, DC 20001
(202) 942-5000
rosa.evergreen@arnoldporter.com
anna.thompson@arnoldporter.com
blake.biles@arnoldporter.com
matthew.scarvie@arnoldporter.com

- and-

Peter Gilhuly
Latham & Watkins LLP
355 South Grand Avenue, Suite 100
(213) 485-1234
peter.gilhuly@lw.com

*Counsel for 2724 11th St. N.W. Tenants' Association*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In re:<br>JEFFERSON-11 STREET, LLC,<br>Debtor. | Case No. 22-00059-ELG<br>Chapter 11 |

**MOTION OF THE 2724 11TH STREET NW TENANTS' ASSOCIATION, INC. FOR AN ORDER DIRECTING PRODUCTION OF DOCUMENTS AND EXAMINATION PURSUANT TO BANKRUPTCY RULE 2004**

The 2724 11th Street NW Tenants' Association (the "Tenants' Association"), by and through its undersigned attorneys, hereby files this motion (the "Motion") pursuant to section 105 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure (the "Rules") and Local Bankruptcy Rule 2004-1 (the "Local

Rules"). The Tenant Association requests that the Court enter an order (proposed order attached as Exhibit A) authorizing (i) the service of subpoenas for production of the documents specified in the document requests annexed hereto as Exhibit B, and (ii) the examination by deposition testimony of certain representatives or agents of the examination of the above-captioned debtor (the "Debtor"), Jefferson-11th Street, LLC, and SCF Management LLC, (collectively, the "2004 Parties"), including but not limited to Ellis J. Parker, Francis Hill Parker, Jennifer Parker and Stanley C. Ford.

## PRELIMINARY STATEMENT

1. As this Court is aware, the Tenants' Association believes this Chapter 11 case should be dismissed and filed a motion to dismiss. In addition, the United States Trustee has moved to dismiss, ECF Dkt. No. 41, and that motion is scheduled to be heard on June 16, 2022. To the extent the case is not dismissed at this June 16, 2022 hearing, discovery is required to investigate certain claims and transactions of the Debtor and its insiders.

2. The Tenants' Association requests authority to conduct an examination of the 2004 Parties to investigate and preserve the value of claims and causes of action that may be pursued for the benefit of the Debtor's non-insider unsecured creditors (which includes the Tenants' Association and the tenants). The insider creditors in this case are the three individual members of the Debtor. They claim to have "loaned" money to the Debtor over the past ten years in the amount of $2 million. But they have yet to provide signed or complete records of promissory notes, loan documents, or other financial records to support these statements. As for the promissory notes that have been disclosed to the Tenants' Association, these are unsigned, cover only a fraction of the total amount, and the individual members have admitted to creating these in contemplation for bankruptcy and only after receiving notice of an adverse ruling.

3. Moreover, the Debtor has acknowledged that it sold a substantial asset in 2020 for $1.35 million dollars, during which time Francis Hill Parker opened a bank account in the name of the Debtor (for the first time), split the proceeds among himself, his father, and brother, and proceeded to immediately close the account. In addition, Debtor's counsel has confirmed the existence of another substantial asset, in the form of a judgment arising from a civil lawsuit, worth almost $1 million. This claim is asserted as a "default judgment" by the Debtor and its insiders against a company and person with whom they continue to work with and do business. These are some of the things that have been "acknowledged." Information is therefore necessary to obtain a more complete understanding of these transactions, and to identify potential causes of action, among other things. Accordingly, the Tenants' Association seek authority to commence discovery from the 2004 Parties relating to the various transactions and potential assets of the Debtors.

## JURISDICTION

4. This court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are section 105 of the Bankruptcy Code, Rules 2004 and 9016, and Local Rule 2004-1.

## BACKGROUND

5. A more fulsome summary of the history and background related to the Debtor and the tenants at the Property (defined below) is set forth in the Tenant Associations' Motion to Dismiss the Bankruptcy Case, or in Alternative, Abstain. *See* ECF Dkt. No. 36. The Tenants' Association fully incorporates the background section and history laid out in that motion herein. *See* ECF Dkt. No. 36, ¶¶ 1-34.

6. The Tenants' Association represents the interest of the tenants who live in the

apartment building located at 2724 11th Street N.W., Washington, D.C. (the "Property").

7. The Debtor is a single-asset real estate limited liability company. Since 2009, the Debtor has owned a 100 percent fee simple interest in the Property. Ellis J. Parker and his two sons, Ellis S. Parker and Francis Hill Parker, share jointly in the ownership of the Property. During the relevant timeframe, but before it was enjoined by a court order, SCF Management, operated by its sole member, Stanley C. Ford, managed the Property at the direction of Ellis J. Parker.

8. On March 31, 2022, the Debtor filed a petition for bankruptcy. The Tenants' Association, the tenants, and the District are the only significant parties in interest in this case. *See* ECF Dkt. No. 1; *see also* ECF Dkt. No. 11. The non-insider debt is primarily comprised of the judgments owed to the District, the Tenants' Association, and the tenants arising from prior litigation.[1]

9. The prior history before the Superior Court related to this Debtor and the Property is extensive and has been set forth in other pleadings by the Tenants' Association before this Court, but the Superior Court found, among other things, that the Debtor was "so undercapitalized that real renovations, real work couldn't be done based on the capitalization of the LLC to address these housing code violations." *See* ECF Dkt. No. 36, Exhibit 2 at 6, n.4. Moreover, according to the Amended Schedules, the Debtor sold a separate property in 2020 for $1.3 million (located at 811 Jefferson Street). At the 341 Meeting of Creditors on April 28, 2022 (the "341 Meeting"), Francis Hill Parker testified that, notwithstanding the ongoing litigation and Receivership, the profits from this sale were immediately taken by the Parkers and distributed to themselves—highlighting further the Parkers' undercapitalization of the Property. Tr. at 81-83 (excerpts

[1] The Debtor also owes real estate taxes to the District's Office of Tax and Revenue in the amount of $246,669.74. *See* ECF Dkt. No. 11, at 10.

attached hereto as Exhibit C). And Francis Hill Parker has testified in 2018 that "[the Debtor has] no bank accounts . . . [and is] set up as a limited liability corporation." ECF Dkt. No. 36, Exhibit 18 at 23; and excerpts attached hereto as Exhibit D.

10. Francis Hill Parker also testified in 2018, "Well, dad says the LLC has no money, it's bankrupt. What the judge, she can't order me to pay something when there's no money. There's nothing that she can do." *See* Exhibit D at 59. Discussing the arrangement whereby his father and stepmother received the profits from the various LLCs, and in response to the question of whether "any money was put in reserve for the property," Francis Hill Parker testified, "No, ma'am. We were told not to do that." And in response to the question "why was that," his answer: "Because of this. But, seriously, we have been told that on all of the LLCs." *Id.* at 71-72.

11. Francis Hill Parker has further acknowledged that any loan documents and promissory notes regarding any alleged loans to the Debtor were not created contemporaneously, but rather, prepared in case of a potential bankruptcy: "No, ma'am. We did those because, and apparently if you are going to file for bankruptcy you are going to have to show when money was lent or ---" *Id*. at 87. He said any loan documents were created "after the money was given" and done at "the end of 2016," *id*., but later says it was in "2017." *Id*. at 104. In addition, the promissory notes disclosed in the D.C. Superior action are unsigned.

12. Francis Hill Parker also disclosed facts suggesting that his sister-in-law, Jennifer Parker, has acted as the Debtor's agent. She participated in internal meetings with other members of the Parker family regarding management of the Property. *Id.* at 54-55. At one point, she spoke with the tenants during a meeting, and essentially acted as the Debtor's spokeswoman in these discussions about renovating the Property. *Id*. at 54-58. Jennifer Parker, on the Debtor's behalf, even signed a management agreement with SCF Management in 2014. *Id*. at 137-38.

13. The Amended Schedules reflect that the Debtor has an asset worth $950,000 stemming from an alleged separate negligence lawsuit against SCF Management. *See* ECF Dkt. No. 11 at 8. At the 341 Meeting, Debtor's counsel acknowledged that "there is some insurance coverage that may be involved in that there is an insurance company involved in the Superior Court litigation under a reservation of rights." *See* Exhibit C, at 29-30.

## RELIEF REQUESTED

14. By this Motion, the Tenants' Association seeks an order authorizing and directing a Rule 2004 examination of the 2004 Parties to obtain the production of documents and depositions concerning, *inter alia*: (i) the existence and authenticity of any promissory notes or loan agreements made by Ellis J. Parker, Ellis S. Parker, Francis Hill Parker, or the Debtor; (ii) any insider loans that Ellis J. Parker, Ellis S. Parker, and Francis Hill Parker have purportedly made to the Debtor; (iii) the Debtor's financial condition; (iv) the motivations for filing bankruptcy; (v) any insurance policies covering the Property, and any claims filed against those policies; (vi) the financial transactions and/or payments by and among the 2004 Parties; (vii) any commingling of personal and corporate assets or funds; (viii) the relationship and communications between Stanley C. Ford and members of the Parker family; and (ix) negotiations, plans, and actions taken to sell the Property. The Tenants' Association reserves its right to serve supplemental and additional document requests.[2]

## BASIS FOR RELIEF

15. Rule 2004 provides, in relevant part, that the Court may authorize the examination

[2] The Debtor has said its intent is to the sell the Propery, but to date has not filed any motion to sell, bidding procedures, sale motion, plan of reorganization or the like. The Tenants' Association reserves all of its right to serve additional document requests and take depositions if any such motions or pleadings are filed.

of any entity relating "to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to discharge." Fed. R. Bankr. P. 2004(b). Such an examination can be ordered "[o]n motion of any party in interest." *Id.*

16. The party seeking Rule 2004 discovery has the burden to show good cause for the examination it seeks, and relief lies in the sound discretion of the Bankruptcy Court. *See In re Millennium Lab Holdings, LLC*, 562 B.R. 614, 627 (Bankr. D. Del. 2016). Good cause is satisfied if the examination sought is "necessary to establish the claim of the party seeking the examination, or if denial of such request would cause the examiner undue hardship or injustice." *ePlus, Inc. v. Katz (In re Metiom, Inc.)*, 318 B.R. 263, 268 (S.D.N.Y. 2004).

17. As such, the rule "permits a very broad scope of examination (testimony and document production)." *In re Madison Williams & Co.*, No. 11-15896, 2014 WL 56070, at *3 (Bankr. S.D.N.Y. Jan. 7, 2014). Accordingly, "[u]nlike traditional discovery, which narrowly focuses on the issue germane to the dispute,' the scope of Rule 2004 is broad and unfettered, and has been likened to a 'fishing expedition' and 'an inquisition'"—even when the examinee is a third party. *In re Millennium Lab Holdings, LLC*, 562 B.R. at 626-27 (citations omitted).

18. The examination's purpose is "to determine the extent of the estate's assets and recover those assets for the benefit of creditors." *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 708 (Bankr. S.D.N.Y. 1991). To that end, legitimate goals of such an examination include "discovering assets, examining transactions, and determining whether wrongdoing has occurred." *See In re Millennium Lab Holdings, LLC*, 562 B.R. at 626. This can also include ascertaining whether the debtor has a viable claim for relief against a third party or to unearth a fraud. *See, e.g., In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) (Rule 2004's

purpose "is to assist a party in interest in . . . assessing whether wrongdoing has occurred"); *In re Ecam Pub., Inc.*, 131 B.R. 556, 560 (Bankr. S.D.N.Y. 1991) (Rule 2004 is intended to be used "to determine whether there are grounds to bring an action to recover property of the estate."); *In re Youk-See*, 450 B.R. 312, 319 (Bankr. D. Mass. 2011) ("[A] large latitude of inquiry should be allowed . . . for the purpose of discovering assets and unearthing frauds.").

19. Here, the information sought by the Tenants' Association falls squarely within the expansive scope of Rule 2004, but is tailored to limit any unnecessary burden to the producing party. One focus of the Tenants' Association Rule 2004 examination is to determine the facts, circumstances, and legitimacy surrounding the numerous "insider loans" and promissory notes allegedly entered into among the Debtor and its three individual members, Ellis J. Parker, Ellis S. Parker, and Francis Hill Parker, all of whom are listed as the Debtor's creditors in the Amended Schedules (allegedly totaling $747,616.34). *See* ECF Dkt. No. 67, at 4. Another aim is to determine the extent, if any, any creditor has already been compensated through alternative sources (*e.g.*, an insurance policy covering the Property), and the surrounding circumstances of a lawsuit between Debtor and SCF Management/Stanley C. Ford, which allegedly resulted in a $950,000 default judgment that Debtor claims as an asset in its Amended Schedules.

20. Debtor's account of its current financial health and condition raises several issues. For example, at the 341 Meeting, Francis Hill Parker testified that the three individual members of the Debtor have loaned the Debtor "more than $2 million dollars." *See* Exhibit C, at 49. When asked if he had promissory notes to support this assertion, Mr. Parker responded that he created promissory notes and reviewed some records "at the end of each year" to ascertain "how much we lent" to the Debtor. *Id*. at 85. These documents, according to him, are within his possession.

21. Yet, the multiple promissory notes covering the years of 2012 through 2021,

contained in Exhibit A of the Amended Schedules, amount to only $727,831.29. This raises several questions. For example, why does this amount differ from the amount listed elsewhere on the same Amended Schedules (allegedly totaling $747,616.34)? What about the $1.3 million the Debtor allegedly received from the sale of other property and allegedly immediately distributed to the Parkers to repay an alleged loan? Does Francis Hill Parker (or others) have the bank records and transaction history to support his assertion that he, his brother, and his father have loaned the Debtor "over $2 million dollars" over the years? And what documents did he review "at the end of each year" to calculate the various amounts loaned to the Debtor?

22. The attached Request for Documents address these critical issues, among others. For example, if Francis Hill Parker cannot produce financial records revealing that he or anyone else has ever loaned the Debtor $2 million, this raises additional questions concerning his pending claim of $747,616.34 as a creditor. Foreclosing examination into this issue would result in undue hardship and an injustice: it would require the remaining creditors, and this Court, to simply accept the self-interested testimony of Francis Hill Parker without any documentary corroboration.

23. The Tenants' Association, as creditors, should be permitted to examine these financial transactions and determine whether the claims of the competing creditors are legitimate or driven by wrongdoing, or what causes of action might exist that can and should be pursued. This is especially the case because, as noted above, the few promissory notes disclosed in the D.C. Superior action are unsigned and were all created for the purposes of filing for bankruptcy. That is, "after the fact." Francis Hill Parker has already admitted these promissory notes were created in 2017.

24. The Tenants' Association also seeks to examine whether the three individual members have already been repaid or compensated for any "loans" purportedly made to the Debtor

or, relatedly, whether the members simply took money from the Debtor that had no relation to any prior "loan." The evidence reflects that the Parker family treated the Debtor's other significant asset as their personal bank account, immediately withdrawing any and all proceeds for themselves, thereby leaving the Debtor undercapitalized. Consider the 2020 "sale of real estate" listed in the Amended Schedules, a second property that belonged to the Debtor. *See* ECF Dkt. No. 11, at 24 (listing a sale of property in 2020 for $1,350,000 under "Gross revenue from business").

25. For that transaction, as noted above, Francis Hill Parker testified at the 341 Meeting that the Debtor received $1.35 million from that sale (after expenses). Yet, this money was not invested to repair the Property, or placed into an account for the Property. Rather, the three members split the proceeds, allegedly according to Francis Hill Parker to repay themselves for a "loan." Francis Hill Parker confirmed at the 341 Meeting that he opened a bank account for the Debtor (for the first time), disbursed the funds, and immediately closed the account. *See* Exhibit C, at 81-83.

26. Again, this curious transaction raises questions. In essence, the individual members apparently adopted a course of action that prioritized and rewarded their own purported claims, to the possible detriment of other creditors. These actions call into question the legitimacy of claims listed in the Amended Schedules, including almost three-quarters of a million dollars, allegedly owed to these insiders. The requested documents will reflect how much money was actually received from the 2020 sale of real estate, and how it was allocated among the three individual members of the Debtor and how it was treated by the Debtor and its insiders. The Tenants' Association should be permitted to investigate how this affects the administration of the Debtor's estate and the assets of the estate, and any alleged claims of these insiders against the Debtor and

claims creditors may have against the Debtor's estate and insiders. Thus, the Rule 2004 examination requested here is critical to understanding the assets and potential assets of the Debtor.

27. Relatedly, the Tenants' Association should be permitted to inquire into the existence of any insurance policies covering the Property and any claims filed by the Debtor and any of its individual members. Exploring this issue now will help the Court determine the extent (if at all) any persons have already been compensated, through other sources, for the same amounts claimed in the Amended Schedules. Precluding a party from seeking recovery for claims for which they have already received partial or full reimbursement from third-parties is an issue that the Tenants' Association may potentially brief. *See, e.g.*, *Farmers Ins. Exchange v. First Choice Chiropractic & Rehabilitation*, No. 3:13-cv-01883-PK, 2012 WL 4506401, at *13-14 (D. Or. July 22, 2015) (declining to reward a party a "windfall" because it had already received reimbursement from a third-party).

28. At the 341 Meeting, the Debtor's counsel confirmed the existence of a negligence claim in the amount of $950,000 against SCF Management, and this is listed as an asset of the Debtor in the Amended Schedules. ECF Dkt. No. 11. Debtor's counsel acknowledged there is some insurance coverage that may be involved with the action before the Circuit Court for Montgomery County, Maryland, although did not explain if insurance had or would be paying on the claim or the relationship of the insurance and the default judgment.

29. At bottom, the Tenants' Association have requested the production of documents that would either corroborate or undermine the claims of the competing nonpriority creditors. Moreover, whether there has been a commingling of corporate assets and intentional undercapitalization, are also legitimate concerns to investigate.

30. It should follow from the above that the Rule 2004 examination relief is therefore

justified and warranted. The Tenants' Association respectfully requests that this Court: (i) enter an Order, substantially in the form annexed hereto as Exhibit A, (a) authorizing the issuance of subpoenas production for examination and copying at the offices of Arnold & Porter Kaye Scholer LLP (Attn: Anna K. Thompson/Matthew T. Scarvie), all documents in the 2004 Parties' custody or control described in the document requests annexed hereto as Exhibit B, and (b) directing representatives or agents of the 2004 Parties, including Stanley C. Ford, Ellis J. Parker, and Francis Hill Parker, to appear for deposition by the Tenants' Association; and (ii) granting such other and further relief as may be just and proper.

## NOTICE

31. The Association is providing notice of this Motion to: (i) the Debtor; (ii) counsel for the Debtor; (iii) Ellis J. Parker; (iv) Ellis S. Parker; (v) Francis Hill. Parker; (vi) Jennifer Parker; (vii) the U.S. Trustee; (viii) SCF Management and its sole member, Stanley C. Ford; and (ix) all parties that have filed notices of appearance in the Chapter 11 Case. In light of the relief requested, the Tenants' Association submits that such notice is reasonable and proper and that no further notice is necessary.

## RESERVATION OF RIGHTS

32. The Tenants' Association reserves the right to apply to the Court to seek additional discovery in connection with these matters.

*INTENTIONALLY LEFT BLANK*

**WHEREFORE**, for the reasons set forth herein, the Tenants' Association respectfully requests that this Court: (i) enter an order, substantially in the form annexed hereto as Exhibit A, granting the relief requested herein; and (ii) grant such other and further relief as the Court deems just and proper.

Dated: June 9, 2022

Respectfully submitted,

By: /s/ Rosa J. Evergreen
Rosa Evergreen (DC Bar # 500227)
Anna K. Thompson (DC Bar # 989038)
Blake Biles (DC Bar # 441679)
Matthew T. Scarvie (DC Bar #1618817)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue NW
Washington, DC 20001
Telephone: (202) 942-5000
Email: rosa.evergreen@arnoldporter.com
anna.thompson@arnoldporter.com
blake.biles@arnoldporter.com
matthew.scarvie@arnoldporter.com

- and-

Peter Gilhuly
Latham & Watkins LLP
355 South Grand Avenue, Suite 100
(213) 485-1234
peter.gilhuly@lw.com

*Counsel for 2724 11th St. N.W. Tenants' Association*

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing has been served via the Court's Electronic Filing System on June 9, 2022 on all parties requesting notice in this proceeding and on the following by overnight mail:

Ellis J. Parker
2165 Ibis Isle Rd
Apt. 9
Palm Beach, FL 33480-5366

Jefferson-11th Street, LLC
Francis Hill Parker
124 Kentucky Ave
Lexington, KY 40502-1755

Francis Hill Parker
221 Chineo Rd
Lexington, KY 40502-1921

Ellis Stuart Parker
78 Lake Drive
Mountain Lakes, NJ 07046-1646

Jennifer Parker
78 Lake Drive
Mountain Lakes, NJ 07046-1646

Jennifer M Reik
223 Boulevard
Mountain Lakes, NJ 07046

Stanley Ford
213 16th St, NE
Washington, DC 20002-6537

SCF Management LLC
213 16th St, NE
Washington, DC 20002-6537

SFC Management, LLC
Stanley Ford
5819 Old Crain Highway
Upper Marlboro, MD 20772

Stanley Ford
1433 T. Street NW, Apt. 101
Washington, DC 20009

The BARAC Co.
Jefferson-11th Street LLC
6901 4th Street, NW
Washington, DC 20012

Jefferson-11th Street, LLC
Francis Hill Parker
213 16th St, NE
Washington, DC 20002

By: /s/ *Rosa J. Evergreen*
Rosa Evergreen (DC Bar #500227)