**Nancy L. Alper, Bar No. 411324**
**Senior Assistant Attorney General**

**Jennifer Berger**
**Section Chief, Social Justice Section**

**Argatonia Weatherington**
**Assistant Attorney General**
**Office of the Attorney General**
**for the District of Columbia**
**400 6th Street, N.W.**
**Washington, DC 20001**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In re:<br>JEFFERSON-11th STREET, LLC<br>Debtor. | Case No. 22-00059-ELG<br>Chapter 11 |

# REPLY OF THE DISTRICT OF COLUMBIA TO THE DEBTOR'S OPPOSITION TO MOTION TO DISMISS OF THE ACTING UNITED STATES TRUSTEE OR, IN THE ALTERNATIVE, TO DIRECT THE APPOINTMENT OF A TRUSTEE

**COMES NOW** the District of Columbia ("District"), by and through counsel, the Office of the Attorney General for the District of Columbia, and files its Reply ("District's Reply") to *Debtor's Opposition to the Motion to Dismiss of the Acting United States Trustee, or in the Alternative to Direct the Appointment of a Chapter 11 Trustee* ("Debtor's Opposition") (Docket Entry No. 97). In support whereof, the District states as follows:

## I. PARTIES

(2) The District, a municipal corporation empowered to sue and be sued, is the local government for the territory constituting the permanent seat of the government of the United States. The District files this action through its chief legal officer, the Attorney General for the District of Columbia. The Attorney General has general charge and conduct of all legal business of the District and all suits initiated by and against the District and is responsible for upholding the public interest. D.C. Code § 1-301.81(a)(1).

(3) Jefferson-11th Street, LLC ("Debtor"), Debtor herein, located at 2724 11th Street, N.W., Washington, DC (the "Property"), is a single asset real estate limited liability company organized under the laws of the District of Columbia with a principal place of business located in the District. Since 2009 Debtor has owned a 100 percent fee simple interest in the Property which is a two-story apartment building with 26 units.

## II. STATEMENT OF FACTS

### A. Introduction

(4) On March 31, 2022 (the "Petition Date"), Debtor filed a voluntary petition (the "Petition") for relief under chapter 11 (the "Chapter 11 Case") of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Columbia (the "Bankruptcy Court").

(5) On May 13, 2022, the Acting United States Trustee filed his *Motion to Dismiss, or in the Alternative to Direct the Appointment of a Chapter 11 Trustee* ("UST Motion to Dismiss") (Docket Entry No. 41). On May 16, 2022, the District filed its *Limited Joinder to the Motion to Dismiss of the Office of the United States Trustee* ("District Limited Joinder") (Docket Entry No. 47). And on May 16, 2022, the Tenants' Association filed its States *Trustee's Motion to Dismiss*

*Chapter 11 Case Pursuant to 11 U.S.C. § 1112(b) or in the Alternative, to Direct the Appointment of a Chapter 11 Trustee Pursuant to 11 U.S.C. § 1104(a)* ("TA's Joinder") (Docket Entry No. 48). Finally, on June 3, 2022, Debtor filed Debtor's Opposition to the UST's Motion to Dismiss.

(6) On April 29, 2022, the District filed its *Opposition to Debtor's Motion for Turnover of Funds from State Ordered Receiver Pursuant to 11 U.S.C. § 543* ("Opposition to Turnover") (Docket Entry No. 33). The Opposition to Turnover contains an extensive description and discussion of the facts preceding Debtor's filing of its Chapter 11 case. Accordingly, the District hereby adopts and incorporates by reference herein its Statement of Facts in its Opposition to Turnover.

**B. Overview and Summary of Factual Background**

(7) As the Court has been made aware, the troubled condition of the Property owned by Debtor has been the focus of unprecedented litigation over many years. Starting as early as 2013, tenants at the Property complained of a multitude of deteriorating conditions within their units and the common area of the building. The conditions included mold, water leakages resulting in ceiling collapses, and infestations of rodents, roaches, and bedbugs.

(8) There is a long history of the refusal of Debtor and its owners to maintain the Property in compliance with the District's housing code. Findings made by the District of Columbia Rental Housing Commission ("RHC"), District of Columbia Office of Administrative Hearings and the Superior Court of the District of Columbia ("Superior Court") held that Debtor, and its principle, Elis Parker, willfully allowed the Property to fall into a state of disrepair.

(9) Debtor's continuing refusal to make repairs to these ongoing conditions led the District to seek relief in Superior Court. Accordingly, on April 24, 2017, the District filed suit

against *inter alia* Debtor[1] in Superior Court, Case No. 2017 CA 002837 2, alleging that Debtor continuously failed to abate the above-mentioned conditions. The District sought the appointment of a Receiver pursuant to the Tenant Receivership Act, D.C. Code § 42-3651.01, *et seq*., and requested the issuance of a permanent injunction, damages and other equitable relief. The District also alleged violations of the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3901, *et seq*.

(10) Evidentiary hearings were held to determine whether a Receiver should be appointed. At the conclusion of those hearings, the Superior Court found that the conditions at the Property included unremediated mold, severe recurring ceiling leaks, and continued infestations of rodents, roaches, and bedbugs. The Court concluded that the Property had been "operated in a manner that demonstrates a pattern of neglect for a period of 30 consecutive days, and such neglect poses a serious threat to the health, safety, or security of the tenants," and that Debtor and SCF Company's proposed plan for rehabilitation was not sufficient to address these serious threats. *See Opposition to Turnover*, Docket Entry No. 33, Par. Nos. 26 – 27 at 8 – 9. On November 17, 2017, the Superior Court appointed Benjamin Gilmore as Receiver.

(11) Indeed, as the Superior Court case has proceeded, the Superior Court has issued numerous rulings and decisions finding that Debtor and its principles have acted in bad faith and engaged in flagrant violations of the District's housing code.

(12) As then Superior Court Judge, now District Court Judge Florence Pan ("Judge Pan") found in her July 23, 2020, decision:

> Defendants (Debtor, Ellis Parker, and SCF Company) acted in bad faith when they refused to acknowledge or remediate the mold issues in the Building, despite receiving ample notice of the

[1] Additional defendants in the District's lawsuit were Ellis Parker, then managing member of Jefferson-11th Street LLC, SCF Management Company ("SCF Company"), and Stanley C. Ford, Sr., managing member of SCF Company.

> problem over an extended period, encompassing at least two years. Defendants (Debtor, Ellis Parker, and SCF Company) willfully misrepresented the conditions in the building by denying the obvious presence of mold, apparently because defendants sought to avoid their obligation to remediate the mold. . . . Defendants' (Debtor, Ellis Parker, and SCF Company) repeated, false denials about the mold infestation were misrepresentations that had severe consequences for plaintiffs, who were forced to live in contaminated units.
>
> What I view as the fraud or wrong in this case is leaving the LLC (Debtor) so undercapitalized that real renovations, real work couldn't be done based on the capitalization of the LLC to address these housing code violations. And it seems to be that it was quite deliberate that there would be no capital reserve within the LLC to address these types of housing code violations and housing code concerns. And it seems to me that the course of this form of litigation was an attempt by the respondents (Debtor, Ellis Parker and SCF Company) to avoid responsibility for making the required changes to bring the building up to code.

Opposition to Turnover, Docket Entry No. 33, Par. Nos. 42 – 43 at 13 - 14.

(13) And, in her August 26, 2021, ruling, Judge Pan stated in relevant part as follows:

> And I have been supervising this case for a long time and so I am very familiar with the facts and the circumstances that underlie the District's request for permanent injunctive relief. . . . I'll start by saying that I think there have been egregious violations of the D.C. Consumer Protection Act and the D.C. Housing Code. And I think the record is replete with requests for repairs and complaints about conditions that simply went unaddressed. . . . We have a building that was neglected and housing code violations that were pervasive and continuous over a prolonged period of time that ultimately required the relocation of tenants to address the problems just to get them up to code. But we're talking about a period when all of that could have been prevented. We're talking about a period where the water problems could have been addressed in a timely way which would have prevented permeating the entire building into the joists of the building.

Opposition to Turnover, Docket Entry No. 33, Par. Nos. 44 at 14.

## III. ARGUMENT

(15) In Debtor's Opposition, Debtor blames the dilapidated condition of its near-century old building on the tenants, stating that the "[Debtor] was forced into an expensive patch and repair mode that was not an ideal approach to resolving issues on a long-term basis." Debtor's Opposition, Par. No. 9 at 3. Debtor argues that it has evidence of many receipts for repairs conducted at the Property and that "individual notices [of complaints regarding the Property's condition] were addressed by management and abatements pursued." Debtor's Opposition, Par. No. 15 at 4 – 5. Further, Debtor states that it could not make the necessary repairs and treat the infestations and mold in the building because tenants stood in the way by fighting rental increases that would provide the funds needed to repair the Property. Opposition, Par. No. 13 at 4.

(16) Debtor's position in its Opposition, however, belies the facts of this case. The thread throughout all the litigation that Debtor has been involved in over the years is that Debtor has refused and continues to refuse to acknowledge that its own shoddy maintenance practices caused the deterioration of its one sole asset.

(17) For example, in its Opposition, Debtor contradicts the sworn deposition testimony of Ellis Parker by stating that Ellis Parker had no control over the Property. Debtor's Opposition, Par. No. 20 at 5. As stated in the District's Opposition to Turnover, Docket Entry No. 33, the Superior Court found that Ellis Parker was the managing member of Debtor and had binding decision-making authority with respect to the decisions regarding whether Debtor was complying with the District's housing code. Mr. Parker has touted himself as the patriarch of the Parker Family with decision making authority on all of decisions of import. *See* Opposition to Turnover, Docket Entry No. 33, District Exhibit No. 9, Ellis Parker Deposition at 2017:12-15, 208:9-11. Indeed, in his deposition, Ellis Parker admitted that he "absolutely" had the funds to repair the

property but simply did not want to do it and referred to tenants as the "bloody tenants" for simply seeking to live in habitable apartments. Opposition to Turnover, Docket Entry No. 33, District Exhibit No. 9, Ellis Parker Deposition at 105:25; 123:4-5.

(18) Simply put, for years, Debtor, Ellis Parker, and SCF Company knew of housing code violations and other serious issues at the Property impacting tenants. They were put on notice repeatedly by tenant complaints, lawsuits, testimony at court hearings, expert reports, inspections, and ultimately, the lawsuit filed by the District against Debtor, Ellis Parker, and SCF Company. Nevertheless, Debtor, Ellis Parker, and SCF Company knowingly and intentionally failed to make repairs and left tenants to live in unsafe, unhealthy, and uninhabitable conditions despite claiming to have sufficient funds to maintain the Property and to rehabilitate it.

(19) The rulings and decisions of the Superior Court, not to mention the rulings of the District of Columbia Rental Housing Commission ("RHC") and the District of Columbia Office of Administrative Hearings, have all demonstrated that Debtor and Ellis Parker's "refusal to provide or arrange for funds to repair the Property is a direct cause of the pattern of neglect that has led to the health, safety, and security issues at the Property."[2]

(20) In Debtor's Objection, Debtor compares the bankruptcy proceeding, *In the Matter of EADS, LLC,* ("EADS") Bankruptcy Case No. 20-00480, to the instant action. That comparison is apt. Like EADS, Debtor herein is not fit to manage its affairs or act as a fiduciary. Both entities have been the subject of multiple legal proceedings. Both have years of documented housing code violations. And both have state court receivers appointed to manage their properties. What Debtor misunderstands is the series of events in EADS. As the Court may recall, the state court

---

[2] Quotation taken from the District's proposed findings of fact for individual liability found at Paragraph 66 and adopted by the Superior Court in its May 29, 2018, Order. Opposition to Turnover, Docket Entry No. 33, District Exhibit No. 10, Par. No. 36 at 13.

receiver was allowed to remain in place pursuant to 11 U.S.C. § 543 of the United States Bankruptcy Code ("Bankruptcy Code") while the debtor was in possession; however, there was a Motion to Appoint Trustee pending. *See* EADS, Docket Entry No. 16. And a decision on the Motion to Appoint Trustee was imminent. This Court granted the District's Motion to Continue Retention and Funding of the receiver on March 19, 2021. *See* EADS, Docket Entry No. 68. Less than two weeks later, the case was converted to Chapter 7 and a trustee was appointed. *See* EADS, Docket Entry No. 105.

(20) Debtor's intent in filing this bankruptcy is manifest in how it is conducting its Chapter 11 case. Early in the bankruptcy proceeding, Debtor sought a turnover of funds held in the Receivership which are used to maintain minimally the Property and pay the tenant rent differentials required due to the mandatory tenant relocation because of the extremely poor living conditions at the Property. Given Superior Court findings that Debtor was deliberately undercapitalized so that there would be no capital reserve with which Debtor could address the types of housing code violations and housing code concerns that exist, Debtor's attempt at accessing those funds was suspect.

(21) Further, Debtor has taken contradictory positions in this Court by seeking a Motion for Relief from Stay in order to appeal Superior Court orders requiring Debtor to fulfill its obligations under the District housing code, including providing for payment of judgments under the District of Columbia Consumer Protection Procedures Act. At the same time, Debtor argues that the stay applies in the pending Superior Court case in an attempt to stay the Superior Court rulings and orders, including the payment of tenant rental differentials ordered as a result of the tenants being relocated because of the Property's condition.

(22) Thus, Debtor is attempting to terminate the Superior Court litigation, which subjects Debtor to a receiver and ongoing expenditures to upkeep the Property; and at the same time have the judgment rendered by the Superior Court set aside by the Court of Appeals. In essence, by pursuing its Motion to Lift Stay to proceed with its appeal in the Court of Appeals, but seeking to stay the Superior Court litigation, Debtor is attempting to preserve all benefits to itself and deny the District its right to use its police and regulatory power enshrined in 11 U.S.C. § 362(b)(4) to protect the health, welfare and safety of its citizens, including in this case the tenants. Debtor also overstates the receivership restrictions in the filed Stipulation. Debtor fails to mention that any parties can file a motion to commence rehabilitation at the Property, and with Court approval, repairs will commence.

(23) Debtor's intent in this bankruptcy case is further revealed by its filing of a recent Status Report in Superior Court, a copy of which is attached hereto and made a part hereof as District Exhibit No. 1. As demonstrated by the Status Report, Debtor through its realtors is marketing its Property and is seeking to identify a purchaser as quickly as possible. In its marketing strategy, the Property is being listed as "TOPA-Free Value-Add Redevelopment Opportunity," but the listing fails to denote that the Property is in Receivership. A copy of the marketing advertisement is attached hereto as District Exhibit No. 2. In essence, Debtor is marketing its Property as a building free of tenant leases and other tenant and receivership obligations. And as stated in its Status Report, Debtor intends on presenting a Plan of Reorganization within ten days of filing the Status Report. This will correspond almost perfectly with the scheduled hearing on the UST's Motion to Dismiss allowing Debtor to argue that dismissing the case is moot since a purchaser has been identified to buy the Property without tenant leases.

(24) Given the Superior Court's rulings finding that Debtor acted in bad faith by deliberately and willfully refusing to maintain the Property as evidenced by the voluminous record compiled in this case going back almost a decade, Debtor should not be permitted to continue as debtor-in-possession. This case should be dismissed and the Superior Court be permitted to exercise its jurisdiction to allow the renovations to the Property to continue in order to preserve the leasehold rights of the tenants so that they may return to the Property.

## IV. RESERVATION OF RIGHTS

(25) The District reserves all of its rights, interests and entitlements, including, without limitation to assert additional objections, rights, entitlements, or requests for relief, including its rights to seek dismissal of this case, conversion or appointment of a trustee in this case, to object to the sale of the Property, object to a plan of reorganization and disclosure statement, and/or to seek to have the reference withdrawn.

Date: June 10, 2022

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

DAVID FISHER
Deputy Attorney General
Commercial Division

/s/ William Burk
WILLIAM BURK, DC Bar No. 464349
Section Chief

/s/ Nancy L. Alper
NANCY ALPER, MD Bar No. 04221
Senior Assistant Attorney General
Land Acquisition and Bankruptcy Section
400 6th Street, N.W., 9th Floor
Washington, DC 20001
(202) 724-8122

**CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of June, 2022, I caused a copy of the foregoing *Reply of the District of Columbia to Debtor's Opposition to the Motion to Dismiss of the Acting United States Trustee, or in the Alternative to Direct the Appointment of a Chapter 11 Trustee* to be filed and served electronically using the Court's ECF System.

/s/ Nancy L. Alper
NANCY L. ALPER, DC Bar No. 411324