Amanda P. Reeves, DC Bar No. 496338
Clayton D. LaForge, DC Bar No. 1033938
Latham & Watkins LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200
amanda.reeves@lw.com
clayton.laforge@lw.com

Peter Gilhuly
Latham & Watkins LLP
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
(213) 485-1234
peter.gilhuly@lw.com

Rosa J. Evergreen, DC Bar No. 500227
Blake Biles
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue NW
Washington, DC 20001
(202) 942-5000
rosa.evergreen@arnoldporter.com
blake.biles@arnoldporter.com

*Counsel for 2724 11th St. N.W. Tenants' Association, Inc.*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In re:<br><br>JEFFERSON-11TH STREET, LLC<br><br>Debtor. | Case No. 22-00059-ELG<br><br>Chapter 11 |

**RESPONSE OF TENANTS' ASSOCIATION TO DEBTOR'S OPPOSITION TO THE ACTING UNITED STATES TRUSTEE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO DIRECT THE APPOINTMENT OF A CHAPTER 11 TRUSTEE**

The 2724 11th St. N.W. Tenants' Association, Inc. (the "Tenants' Association"), by and through its undersigned counsel, submits this response (this "Response") to the *Opposition to the Acting United States Trustee's Motion to Dismiss or, in the Alternative, to Direct the Appointment*

*of A Chapter 11 Trustee* [Docket No. 97] (the "Opposition"), filed by Jefferson-11th Street, LLC (the "Debtor"), and in further support of *The Acting United States Trustee's Motion to Dismiss Chapter 11 Case Pursuant to 11 U.S.C. § 1112(B), or in the Alternative, to Direct the Appointment of a Chapter 11 Trustee Pursuant to 11 U.S.C. § 1104(a)* [Docket No. 41] (the "UST Motion") and the *Joinder of the Tenants' Association to Acting United States Trustee's Motion to Dismiss Chapter 11 Case Pursuant to 11 U.S.C. § 1112(b) or in the Alternative, to Direct the Appointment of A Chapter 11 Trustee Pursuant to 11 U.S.C. § 1104(a)* [Docket No. 48] (the "Joinder"),[1] and respectfully represent as follows:

**RESPONSE OF TENANTS' ASSOCIATION**

1. The Opposition fails to address a fundamental issue with this chapter 11 case, the Debtor and its owners have, for a period of years, shown a flagrant disregard for the health and safety of the tenants, committed egregious housing code violations that they have had little interest in remediating, abused the Debtor's corporate form in an effort to avoid responsibility for these violations, demonstrated clear conflicts of interest, and made numerous misrepresentations regarding the same to multiple courts. Their actions resulted in the appointment of the Receiver and a finding of individual liability for the Debtor's owners. They are not appropriate stewards of the Debtor's estate and they should not be permitted to remain in control of this chapter 11 process.

2. To be clear, the above is not merely the opinion of the Tenants' Association, these are the findings of the ALJ and Superior Court, which are both intimately familiar with the history of the Debtor and the Property, and the statements of the Debtor's own managing member at the 341 meeting (an excerpt of the transcript from the June 8, 2022 continued 341 meeting is attached hereto as **Exhibit A**). These findings and statements include, among others, the following:

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Joinder.

<u>ALJ</u>

- The ALJ ordered rent refunds and rollbacks due to "excessive and prolonged violations of the housing regulations that have affected Tenants' health, safety, and security, and the habitability of the Housing Accommodation" and imposed a civil penalty in the maximum amount allowed by law for the Debtor's and SCF Management's "willful" failure to address these violations. Motion to Dismiss, Ex. 1 at 447–59.

- The ALJ's Final Order determined that the Debtor and SCF Management acted in bad faith, including finding that the Debtor and SCF Management (a) exhibited "dishonest intent" by presenting misleading evidence in the form of improperly tampered with (altered) photographs; (b) were "disingenuous" in failing to remedy the substantial reduction of services after receiving a letter from the tenants detailing all current violations; and (c) "demonstrated a heedless disregard of [their] duty to comply with the housing code" by failing to abate rampant pest infestations over a period of three years. *Id.*

<u>Superior Court</u>

- "What I view as the fraud or wrong in this case is leaving the LLC [the Debtor] so undercapitalized that real renovations, real work couldn't be done based on the capitalization of the LLC to address these housing code violations. And it seems to be that it was quite deliberate that there would be no capital reserve within the LLC to address these types of housing code violations and housing code concerns. And it seems to me that the course of this form of litigation was an attempt by the respondents [the Debtor, Ellis J. Parker, and SCF Management] to avoid responsibility for making the required changes to bring the building up to code." Motion to Dismiss, Ex. 2 at 6, n. 4.

- "Defendants [the Debtor, Ellis J. Parker, and SCF Management] acted in bad faith when they refused to acknowledge or remediate the mold issues in the Building, despite receiving ample notice of the problem over an extended period, encompassing at least two years. Defendants [the Debtor, Ellis J. Parker, and SCF management] willfully misrepresented the conditions in the building by denying the obvious presence of mold, apparently because defendants sought to avoid their obligation to remediate the mold. . . . Defendants' [the Debtor, Ellis J. Parker, and SCF Management] repeated, false denials about the mold infestation were misrepresentations that had severe consequences for plaintiffs, who were forced to live in contaminated units." *Id.* at 18–19.

- "And I have been supervising this case for a long time and so I am very familiar with the facts and the circumstances that underlie the District's request for permanent injunctive relief. . . . I'll start by saying that I think there have been egregious violations of the D.C. Consumer Protection Act and the D.C. Housing Code. And I think the record is replete with requests for repairs and complaints about conditions that simply went unaddressed. . . . We have a building that was

neglected and housing code violations that were pervasive and continuous over a prolonged period of time that ultimately required the relocation of tenants to address the problems just to get them up to code." Motion to Dismiss, Ex. 15 at 26–28, 46.

Continued 341 Meeting

- Discussing the Property, Mr. Parker testified that "Jefferson 11th Street has never directly paid any bill at any point in time in its entire existence. So we've always had a property manager." Ex. A at 16.

- Discussing property sold by the Debtor in 2020, Mr. Parker testified that he and the other owners pocketed the proceeds (apparently approximately $1.1-1.35 million),[2] allegedly to repay themselves, while litigation concerning the Property was ongoing and creditor claims pending. Ex. A at 37. However, while stating "we repaid ourselves" he also acknowledged that there was never a note for that alleged "loan" and that Carter (the CPA) considered the outstanding amount a "capital contribution." *Id.* In other words, the Debtor's owners opened a bank account (solely to deposit the proceeds) and then immediately withdrew the proceeds of the sale to pay themselves back for an alleged obligation for which no documentation exists. The Debtor's owners also assert that they are significant creditors of the Debtor's estate with respect to alleged "loans," in a total aggregate amount that varies in different places on the Schedules, but is apparently over $700,000.

- Discussing SCF Management—the property manager that the Debtor allegedly sued in 2020 in the Circuit Court of Maryland and recently received a default judgment against, and that has been enjoined from managing the Property by the Superior Court—Mr. Parker testified that "SCF Management is [currently] employed by other LLCs that we control" and that he ordered them to board up the Property after the bankruptcy was filed. Ex. A at 30, 40-41.

3. The Tenants' Association agrees with the U.S. Trustee that, as a threshold matter, the Debtor and its owners' history of malfeasance presents sufficient cause to divest them of control of this chapter 11 process, regardless of the Court's ultimate determination regarding dismissal, abstention, or appointment of a chapter 11 trustee. This is also the same determination that the Superior Court made in appointing the Receiver in the first place.

[2] At the continued 341 meeting, Mr. Parker testified it was $1.1 million after expenses, but testified at the earlier 341 meeting that it was $1.3 million after expenses, and the Schedules also list "gross revenue" as $1.35 million.

4. With that being said, the Court should dismiss this chapter 11 case, or abstain. Dismissal or abstention is appropriate, among other reasons, because this chapter 11 proceeding is ultimately unnecessary. Litigation concerning the principal parties in this chapter 11 case and the Property has been proceeding in the Superior Court for more than seven years; the Superior Court is acutely familiar with the issues presented and the Receiver is required to report there to this day. The Superior Court has already set forth a plan of remediation for the Property, pursuant to which the Property can be remediated and the purported goals of this chapter 11 case can be accomplished. Moreover, if the Debtor wishes to sell the property, it can do so under the auspices of the Superior Court. *See* Tenant Receivership Act, § 42-3651.06(j)(1)(B) (stating that the Superior Court may "authorize" the Receiver to "[s]ell the property for a fair-market price to an owner capable of maintaining the property").

5. The Debtor and its owners have commenced this chapter 11 proceeding for one reason: to sell the property free and clear of the tenants' leasehold interests for the sole benefit of the Debtor's owners.[3] The Court should not permit such a result to occur to the further detriment of the tenants, particularly in this chapter 11 case, where the only significant liabilities of the

---

[3] The Tenants' Association believes that any such sale would violate the District's housing laws and regulations, orders of the Superior Court, and the tenants' rights under section 365 of the Bankruptcy Code (which the Tenants' Association acknowledges may be a matter of first impression in this circuit). *See generally Pinnacle Restaurant at Big Sky, LLC v. CH SP Acquisitions, LLC (In re Spanish Peaks Holdings, II, LLC)*, 872 F, 3d 892, 898 (9th Cir. 2017) (acknowledging that the majority approach is that property may not be sold free and clear of a leasehold under section 363 of the Bankruptcy Code). The Tenants' Association believes that the limited circumstances and relevant non-bankruptcy law that have formed the basis for a minority of courts to authorize a sale free and clear of a leasehold are not present in this chapter 11 case.

The Debtor has cited certain of the Court's cases where there was simultaneously a receiver and a bankruptcy, such as *Eads*, in an attempt to suggest such cases support the bankruptcy filing. That cannot be further from the truth. In *Eads*, there was a chapter 7 trustee appointed and the property was sold subject to the tenants' leases, which were assumed and assigned to the purchaser, and with the support of the chapter 7 trustee, the purchaser entered into a development agreement with the tenants that provided for the terms by which the conditions at the property would be addressed, among other things. In that case, both the chapter 7 trustee and the purchaser recognized the requirement to provide services required under the District's laws to the tenants under the residential leases and the chapter 7 trustee was not seeking to circumvent the receivership proceeding or its orders.

Debtor are those owed to the tenants or derivative of the Debtor and its owners violations of the tenants' rights.[4] Nor should the Court should countenance the Debtor and its owners clear conflict of interest and permit them to use the chapter 11 process solely to benefit themselves. The Court should instead dismiss this chapter 11 case, or abstain.

**RESERVATION OF RIGHTS**

6. The Tenants' Association reserves all of its rights, interests, arguments, and objections, including its right to supplement and amend this Response at any time, and to raise any other arguments or otherwise respond to arguments regarding the issues addressed in connection with the UST Motion and the Joinder, and to pursue, supplement, and amend this Response. Moreover, while the Court does not need to address whether the Court has subject matter jurisdiction to modify or change the powers or role of the Receiver in deciding to dismiss or abstain from this chapter 11 case, the Tenants' Association reserves all rights, objections, and arguments with respect to any assertion that this Court cannot modify the Superior Court orders, including, without limitation, under the *Rooker–Feldman* doctrine.

[*Remainder of page left intentionally blank.*]

[4] The Debtor and its owners previously tried to force the tenants to renounce their tenancies in connection with a potential settlement of the Superior Court litigation, which the Superior Court noted "was a demand that the defendants knew was not acceptable to plaintiffs." Motion to Dismiss, Exhibit 2 at pg. 13-14, 23. The Debtor alleges in the Opposition that the Tenants' Association is attempting to "strong-arm" the Debtor into waiving its rights, but the opposite is true—the Debtor is trying to use this bankruptcy to circumvent the District's laws and regulations in order to force the tenants into an outcome that they have already rejected.

**WHEREFORE**, for the reasons set forth herein and in the UST Motion and the Joinder, the Tenants' Association files this Response and asserts good cause exists to dismiss the bankruptcy case or abstain.

Dated: June 10, 2022

Respectfully submitted,

*/s/Amanda P. Reeves*

Amanda P. Reeves, DC Bar No. 496338
Clayton D. LaForge, DC Bar No. 1033938
Latham & Watkins LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200
amanda.reeves@lw.com
clayton.laforge@lw.com

Peter Gilhuly
Latham & Watkins LLP
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
(213) 485-1234
peter.gilhuly@lw.com

Rosa J. Evergreen, DC Bar No. 500227
Blake Biles
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue NW
Washington, DC 20001
(202) 942-5000
rosa.evergreen@arnoldporter.com
blake.biles@arnoldporter.com

*Counsel for 2724 11th St. N.W. Tenants' Association, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 10th day of June, 2022, I caused a copy of the foregoing to be served electronically upon filing via the ECF system on all counsel who have entered an appearance herein.

*/s/Amanda P. Reeves*
Amanda P. Reeves, DC Bar No. 496338