**Nancy L. Alper, Bar No. 411324**
**Senior Assistant Attorney General**
**Office of the Attorney General**
**for the District of Columbia**
**400 6th Street, N.W.**
**Washington, DC 20001**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **In the Matter of** | |
| **JEFFERSON-11TH STREET, LLC,** | **Case No. 22-00059** |
| Debtor and Debtor-in-Possession. | **Chapter 11** |

## OBJECTIONS OF THE DISTRICT OF COLUMBIA TO DEBTOR'S DISCLOSURE STATEMENT AND CHAPTER 11 PLAN

**COMES NOW** Debtor Jefferson-11th Street, LLC ("Debtor"), and the District of Columbia ("District"), through the Office of the Attorney General for the District of Columbia, and files its Objections to Debtor's Second Amended Disclosure Statement and Second Amended Chapter 11 Plan. In support thereof, the District states as follows:

### I. JURISDICTION

(1) This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334, and 11 U.S.C. § 1104, *et seq.* This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. PARTIES

(2) The District, a municipal corporation empowered to sue and be sued, is the local government for the territory constituting the permanent seat of the government of the United States. The District files this action through its chief legal officer, the Attorney General for the District of Columbia. The Attorney General has general charge and conduct of all legal business of the District and all suits initiated by and against the District and is responsible for upholding the public interest. D.C. Code § 1-301.81(a)(1).

(3) Jefferson-11th Street, LLC ("Debtor"), Debtor herein, located at 2724 11th Street, N.W., Washington, DC (the "Property"), is a single asset real estate limited liability company organized under the laws of the District of Columbia with a principal place of business located in the District. Since 2009 Debtor has owned a 100 percent fee simple interest in the Property which is a two-story apartment building with 26 units.

## III. STATEMENT OF FACTS

### A. Introduction

(4) The District adopts and incorporates by reference herein all of its previous pleadings filed in Debtor's bankruptcy proceeding, including its *Amended Opposition to Debtor's Motion for Turnover of Funds* ("Opposition to Turnover"), Docket Entry No. 33, and its *Motion to Compel Debtor To File its Tax Returns* ("Motion to Compel"), Docket Entry No. 138.

### B. Preliminary Statement

(5) In assessing whether confirmation of Debtor's Second Amended Chapter 11 Plan ("Second Amended Plan"), Docket Entry No. 220, Debtor's Second Amended Plan must be viewed within the larger context of the history of the litigation beginning approximately ten years ago in 2013 and continuing today in the Court of Appeals for the District of Columbia.

Accordingly, a detailed summary of the litigation and rulings by the Superior Court of the District of Columbia ("Superior Court") that are relevant to Debtor's Plan and are still pending is set forth as follows.

## C. Factual Background

### 1. Superior Court Rulings Involving District of Columbia Consumer Protection Procedures Act

(6) For years, starting as early as 2013, tenants at the Property complained of a multitude of deteriorating conditions within their units and the common area of the building. The conditions included mold, water leakages resulting in ceiling collapses, and infestations of rodents, roaches, and bedbugs. Instead of making necessary repairs to comply with the housing code, Debtor and its management company, SCF Management LLC ("SCF Company"), pursued repeated attempts to raise rents through hardship petitions, allowing the building to decay in the meantime. Consistent with the law in the District, tenants objected to the hardship petitions on the grounds that there were serious unabated housing code violations.

(7) Indeed, there is a long history of the refusal by Debtor and its owners to maintain the Property in compliance with the District's housing code. Findings made by the District of Columbia Rental Housing Commission ("RHC"), District of Columbia Office of Administrative Hearings ("OAH") and the Superior Court of the District of Columbia ("Superior Court") held that Debtor, and its principle, Elis Parker, willfully allowed the Property to fall into a state of disrepair. So great was the disrepair that the RHC rejected Debtor's substantial rehabilitation petition, OAH ordered Debtor to return tenants' rents.

(8) Debtor and SCF Company's continuing refusal to make repairs to these ongoing conditions led the District to seek relief in Superior Court. Accordingly, on April 24, 2017, the District filed suit against Debtor, and SCF Company in Superior Court, Case No. 2017 CA

002837, alleging that Debtor and SCF Company continuously failed to abate the above-mentioned conditions. Additional named defendants in the District's lawsuit were Ellis Parker, then managing member of Debtor and Stanley C. Ford, Sr., managing member of SCF Company. The District sought the appointment of a Receiver pursuant to the Tenant Receivership Act, D.C. Code § 42-3651.01, *et seq*., and requested the issuance of a permanent injunction, damages, and other equitable relief. The District also alleged violations of the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3901, *et seq*.

(9) Regarding the issue of the appointment of a receiver, evidentiary hearings were held before the Superior Court in September and October 2017, at the conclusion of which the Superior Court ordered the appointment of a receiver pursuant to the Tenant Receivership Act ("TRA"), D.C. Code §§ 42-3651.02(a)-(b).

(10) Regarding the issues involved in determining whether violations of the CPPA had occurred, the Superior Court held various hearings from 2018 through 2021. As a result of Debtor's failure to fund the receivership, at a hearing held in May 2018, the Superior Court found that Ellis Parker was the managing member of Debtor and had binding decision-making authority with respect to the decisions regarding whether Debtor was complying with the District's housing code. The Superior Court found that Parker's "refusal to provide or arrange for funds to repair the Property is a direct cause of the pattern of neglect that has led to the health, safety, and security issues at the Property." Opposition to Turnover, Docket Entry No. 33, District Exhibit No. 8, Par. No. 66 at 13.

(11) Significantly, in its May 29, 2018, Order, the Superior Court concluded that Ellis Parker is personally liable under the TRA and also found that Mr. Parker has personal liability under the CPPA. Opposition to Turnover, Docket Entry No. 33, District Exhibit No. 10. In

addition, the Superior Court found that Ellis J. Parker was jointly and severally liable for payments due to the Receiver from Debtor. The Court ordered Debtor and Ellis Parker to pay the Receiver $1.875 million by the close of business on June 8, 2018.

(12) On September 19, 2019, the Superior Court issued oral rulings granting the District's motion for partial summary judgment in which it found Debtor and SCF Company liable for committing unlawful trade practices in violation of Sections 28-3904 (a), (d), (e), and (dd) of the CPPA. *See* Opposition to Turnover, Docket Entry No. 33, District Exhibit No. 13. Concluding that violations of the CPPA include "any flagrant, fraudulent, or willful violation of a housing regulation in Title 14, which includes both the housing code and implied warranty of habitability, and that would have to constitute an imminent danger to the health or safety of any tenant or occupant of a housing unit or housing accommodation,"[1] the Superior Court found that such violations had occurred at the Property.

(13) The Superior Court issued another Order granting the District's Motion for Summary Judgment on Damages and Fees on July 23, 2020. In granting the District's Motion, then Superior Court Judge, now District Court Judge Florence Pan ("Judge Pan") found as follows:

> What I view as the fraud or wrong in this case is leaving the LLC (Debtor) so undercapitalized that real renovations, real work couldn't be done based on the capitalization of the LLC to address these housing code violations. And it seems to be that it was quite deliberate that there would be no capital reserve within the LLC to address these types of housing code violations and housing code concerns. And it seems to me that the course of this form of litigation was an attempt by the respondents (Debtor, Ellis Parker and SCF Company) to avoid responsibility for making the required changes to bring the building up to code.

Opposition to Turnover, Docket Entry No. 33, District Exhibit No. 14 at 6, n. 4.

---

[1] *See* District Exhibit No. 13 (9/19/19 Hr'g Tr.) at 57:2-8.

(14) Judge Pan concluded by finding that:

> Defendants (Debtor, Ellis Parker, and SCF Company) acted in bad faith when they refused to acknowledge or remediate the mold issues in the Building, despite receiving ample notice of the problem over an extended period, encompassing at least two years. Defendants (Debtor, Ellis Parker, and SCF Company) willfully misrepresented the conditions in the building by denying the obvious presence of mold, apparently because defendants sought to avoid their obligation to remediate the mold. . . . Defendants' (Debtor, Ellis Parker, and SCF Company) repeated, false denials about the mold infestation were misrepresentations that had severe consequences for plaintiffs, who were forced to live in contaminated units.

District Exhibit No. 14 at 18 - 19.

(15) On August 26, 2021, Judge Pan rendered an oral ruling and granted the District's motion for a permanent injunction against Debtor, its managing member, Mr. Parker, and SCF Company and its managing partner, Stanley Ford, Sr. *See* August 26, 2021, Transcript with excerpts attached hereto and made part hereof as Motion for Turnover, District Exhibit No. 15. Specifically, Judge Pan stated in relevant part as follows:

> And I have been supervising this case for a long time and so I am very familiar with the facts and the circumstances that underlie the District's request for permanent injunctive relief. . . . I'll start by saying that I think there have been egregious violations of the D.C. Consumer Protection Act and the D.C. Housing Code. And I think the record is replete with requests for repairs and complaints about conditions that simply went unaddressed. . . . We have a building that was neglected and housing code violations that were pervasive and continuous over a prolonged period of time that ultimately required the relocation of tenants to address the problems just to get them up to code. But we're talking about a period when all of that could have been prevented. We're talking about a period where the water problems could have been addressed in a timely way which would have prevented permeating the entire building into the joists of the building.

Opposition to Turnover, District Exhibit No. 15 at 26 – 28, 46.

(16) Simply put, for years, Debtor, Ellis Parker, and SCF Company knew of housing code violations and other serious issues at the Property impacting tenants. They were put on notice repeatedly by tenant complaints, lawsuits, testimony at court hearings, expert reports, inspections, and ultimately, the lawsuit filed by the District against Debtor, Ellis Parker, SCF Company, and Stanley Ford. Nevertheless, Debtor, Ellis Parker, SCF Company, and Stanley Ford, Sr. knowingly and intentionally failed to make repairs and left tenants to live in unsafe, unhealthy, and uninhabitable conditions despite claiming to have sufficient funds to maintain the Property and to rehabilitate it.

(17) On September 28, 2021, the Superior Court issued a written decision finding that "[r]estitution, civil penalties, and payment of costs and attorneys' fees are appropriate as authorized under . . . the CPPA." Opposition to Turnover, Docket Entry No. 33, District Exhibit No. 16, Par. No. 6 at 2. Specifically, the Superior Court found that Debtor, Ellis Parker, SCF Company and Stanley Ford Sr. properly owed restitution for failure to maintain the Property in a habitable condition and granted permanent injunctive relief because Debtor and SCF Company have repeatedly shown, despite notice and complaints, a refusal to adhere to District law and abate deteriorating conditions at the Property. The Superior Court ordered the provisions of the Judgment and Order apply to Debtor, Ellis Parker, SCF Company, Stanley Ford Sr. and, as appropriate, their officers, agents, successors, assignees, affiliates, and any and all other persons acting in concert with these entities.

(18) On October 27, 2021, Debtor Jefferson-11th Street, LLC and Ellis Parker filed a notice of appeal in the Court of Appeals for the District of Columbia ("DC Court of Appeals") from the Superior Court's September 2021 Judgement and Order. On August 16, 2022, appellants filed their amended opening brief. As of the date of District's Opposition to Debtor's

Second Amended Plan, Debtor's appeal to determine liability of it and members of Jefferson-11th Street, LLC is pending.

**2. Outstanding Issues Regarding Unincorporated Business Franchise Taxes**

(19) The District of Columbia Office of Tax and Revenue's ("OTR") records show the following regarding Debtor's record of filing tax returns for its unincorporated business franchise taxes:

> TAX YEARS 2008 and 2011: Debtor filed the unincorporated business franchise tax returns and paid the taxes due.
>
> TAX YEARS 2009 AND 2010: Debtor filed an extension to file returns and pay its unincorporated business franchise taxes. After receiving an extension, Debtor never filed tax returns nor paid its unincorporated business franchise taxes.
>
> TAX YEARS 2012 – 2021: Debtor has failed to file its unincorporated business franchise tax returns or pay taxes for its unincorporated business franchise tax obligations for tax years 2012 through 2021.

(20) In its first filing of its Plan of Reorganization on June 29, 2022, Docket Entry No. 128 (amended on June 30, 2022, Docket Entry No. 131) and in its first Disclosure Statement filed on June 30, 2022, Docket Entry No. 130 (amended on June 30, 2022, Docket Entry No. 132), Debtor stated that it did not have any priority tax claims. Specifically, with regard to priority tax claims, Debtor stated in its Disclosure Statement the following:

> Under the Plan, administrative claims and priority tax claims are unclassified, meaning they are not placed in any specific class. The Debtor has one known administrative claim: professional fees. To date the Debtor has no priority tax claim.

Disclosure Statement, Docket Entry No. 130, at 8.

(21) Debtor continues to maintain that it does not have priority tax claims. In its most recent Disclosure Statement filed on June 12, 2023, Docket Entry No. 221, Debtor uses the same

language and states that to date, Debtor has no priority tax claim. Disclosure Statement, Docket Entry No. 221, Article V. D-1 at 7.

(22) While Debtor and the District/OTR are involved in negotiations to resolve outstanding issues involving the unincorporated business franchise taxes ("UBF Taxes"), OTR's records show that Debtor has UBF priority tax claims.

### D. Bankruptcy Filing and Debtor's Filing of Disclosure Statement, Chapter 11 Plan and Their Amendments

(23) On March 31, 2022 (the "Petition Date"), Debtor filed a voluntary petition (the "Petition") for relief under Chapter 11 (the "Chapter 11 Case") of Title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Columbia (the "Bankruptcy Court").

(24) Debtor filed its first Chapter 11 Plan ("Plan") on June 29, 2022, Docket Entry No. 128, and its first Disclosure Statement on the same date, June 30, 2022, Docket Entry No. 130. Debtor amended both its Plan and Disclosure Statement and filed them on June 30, 2022. Amended Plan, Docket Entry No. 131; Amended Disclosure Statement, Docket Entry No. 132.

(25) Debtor filed its second amended Plan ("Second Amended Plan") on June 12, 2023, Docket Entry No. 220, and on the same date filed its second amended Disclosure Statement, Docket Entry No. 221. The District objects to both Debtor's Second Amended Plan and Disclosure Statement.

## IV. ARGUMENT

### A. Debtor's Second Amended Plan of Liquidation Is Vague in Material Respects.

(26) A plan cannot be confirmed if its provisions are vague or ambiguous. *In re E.I. Parks No. 1 Ltd. Partnership*, 122 B.R. 549 (Bankr. W.D. Ark. 1990) (denying confirmation because various plan provisions were "unreasonably vague").

(27) Debtor's Second Amended Plan is vague in material respects and therefore cannot be confirmed. Specifically, Article IX of both Debtor's Second Amended Plan and Disclosure Statement, captioned Exculpation, enjoins litigation against "Estate Parties." The Article II, Definition for the Second Amended Plan defines "Estate Parties" as "Persons referenced in Article IX.B of the Plan." Docket Entry No. 220 at 5. And Article IX.B defines "Estate Parties" as "the Debtor, and its professionals, representatives, successors and assigns." Plan, Article IX.B at 20, Docket Entry No. 220.

(28) As described *supra* at Par. Nos. 17 and 18 at 7, the Superior Court issued a Judgment and Order finding that restitution, civil penalties, and payment of costs and attorneys' fees are appropriate to be assessed against Debtor, Ellis Parker, SCF Company, and Stanley Ford Sr. Significantly, the Superior Court ordered the provisions of the Judgment and Order to apply not just to Debtor, Ellis Parker, SCF Company, and Stanley Ford Sr., but also their officers, agents, successors, assignees, affiliates, and any and all other persons acting in concert with these entities.

(29) Significant litigation remains to be resolved between Debtor, other non-debtor parties, and the District and is currently pending in the DC Court of Appeals. Any provision in the Second Amended Plan that interferes with the District's litigation against non-debtors is impermissible. Since Debtor's definition of "Estate Parties" is vague and ambiguous, it may be interpreted to include the Debtor, Ellis Parker, SCF Company, Stanley Ford Sr., as well as their officers, agents, successors, assignees, affiliates, and any and all other persons acting in concert with these entities. Since a material provision of the Second Amended Plan is vague and ambiguous, and it violates the law on the third party releases, the Second Amended Plan cannot be confirmed.

**B. Exculpation and Injunction Provisions Are Overly Broad and the Injunction Provision Constitute a Discharge**

(30) The Second Amended Plan violates section 1141(d)(3) of the United States Bankruptcy Code ("Bankruptcy Code"), 11 U.S.C. §1141(d)(3), which provides that plan confirmation does not discharge a debtor if the plan is a liquidating plan, the debtor does not engage in business after consummation of the plan, and the debtor would be denied a discharge under section 727 of the Bankruptcy Code, 11 U.S.C. § 727, if the case were a case under chapter 7. All of these elements are present in this case, and the Second Amended Plan's current injunction provision purports to enjoin all Estate Parties holding prepetition liabilities against the Debtor from taking the types of actions listed in section 524(a) of the Bankruptcy Code, 11 U.S.C. §524, which section enumerates the effect of a discharge.

(31) Accordingly, any exculpation release or injunction provisions in the Debtor's Second Amended Plan that interfere with or purport to enjoin the release or limit claims against non-debtors are not permissible and the Second Amended Plan cannot be confirmed.

**C. Debtor's Second Amended Plan and Disclosure Statement Misrepresent the Current Status of the District's UBF Tax Claim**

(32) As stated *supra* at Par. Nos. 19 – 22 at 8 – 9, OTR's records show that Debtor has failed to file UBF tax returns for tax years 2008 through 2021.

(33) Section 507 of the Bankruptcy Code, 11 U.S.C. § 507, defines what constitutes priority claims in bankruptcy proceedings. Section 507(a)(8) of the Bankruptcy Code, 11 U.S.C. § 507(a)(8), provides what constitutes a tax priority claim as follows:

> (A) a tax on or measured by income or gross receipts for a taxable year ending on or before the date of the filing of the petition
> (i) for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition. . . .

(34) As stated *supra* at Par. No. 22, while Debtor and the District/OTR are involved in negotiations to resolve outstanding issues involving the UBF taxes, OTR's records show that Debtor has UBF priority tax claims.

(35) Accordingly, Debtor's Second Amended Disclosure Statement mistakenly states that Debtor does not have priority tax claim. Disclosure Statement, Docket Entry No. 221, Article V. D-1 at 7. While Debtor does not disclose its position in its Second Amended Plan, this omission is a misrepresentation of the status of the District's UBF tax claim. Accordingly, Debtor's Second Amended Plan cannot be confirmed.

WHEREFORE, the District of Columbia objects to the confirmation of Debtor's Second Amended Plan.

Date: July 18, 2023.

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

DAVID FISHER
Deputy Attorney General, Commercial Division

/s/ William Burk
William Burk, Section Chief,
Land Acquisition and Bankruptcy

/s/ Nancy L. Alper
NANCY L. ALPER (DC Bar 411324)
Senior Assistant Attorney General
400 6th Street, N.W.
Washington, DC 20001
(202) 724-8122
Nancy.alper@dc.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Objections to Debtor's Second Amended Disclosure Statement and Second Amended Chapter 11 Plan was filed and served electronically through the Court's electronic case filing system, this 18th day of July, 2023.

/s/ Nancy L. Alper
Nancy L. Alper