UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: | ) |
| | ) Case No. 22-00059-ELG |
| JEFFERSON-11TH STREET, LLC, | ) Chapter 11 |
| | ) |
| Debtor. | ) |
| | ) |

## **LINE ATTACHING DEBTOR'S AMENDED CHAPTER 11 PLAN**

COMES NOW Jefferson-11th Street, LLC ("Debtor"), by and through counsel,

McNamee Hosea, P.A., and files the *Debtor's Amended Chapter 11 Plan* dated June 12, 2023.

The Debtor previously inadvertently uploaded a redline.

Dated:  June 20, 2023                    Respectfully submitted,

/s/ *Justin P. Fasano*

Janet M. Nesse (D.C. Bar 358514)
Justin P. Fasano (DC Bar MD21201)
McNamee Hosea
6404 Ivy Lane, Suite 820
Greenbelt, MD 20770
(301) 441-2420
jnesse@mhlawyers.com/ jfasano@mhlawyers.com
Counsel for Jefferson-11th Street, LLC

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 20, 2023, a copy of the foregoing was filed and served via the

Court's Electronic Case Filing System on all parties receiving such notification.

/s/ *Justin P. Fasano*
Counsel

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 22-00059-ELG |
| JEFFERSON-11TH STREET, LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |

**DEBTOR'S AMENDED CHAPTER 11 PLAN**

## I.  INTRODUCTION

Pursuant to § 1121 of the Bankruptcy Code, Jefferson-11th Street, LLC, debtor and debtor-in-possession in the above-captioned bankruptcy case, by and through its attorneys, hereby respectfully submits the Debtor's Amended Chapter 11 Plan pursuant to the provisions of the Bankruptcy Code.  The Debtor is the proponent of the Plan within the meaning of Bankruptcy Code § 1129.  Reference is made to the Disclosure Statement for the Amended Chapter 11 Plan , to be distributed in support hereof, for a discussion of (i) the Debtor's history, businesses and operations, (ii) a summary and analysis of this Plan, and (iii) certain related matters, including the proposed sale of the Debtor's primary asset.  Subject to certain restrictions and requirements set forth in Bankruptcy Code § 1127 and Bankruptcy Rule 3019, the Debtor reserves the right to alter, amend, modify, revoke, or withdraw this Plan prior to its substantial consummation.

**ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ CAREFULLY THE PLAN AND THE DISCLOSURE STATEMENT (INCLUDING ALL EXHIBITS THERETO), EACH IN ITS ENTIRETY.  AS ALL SUCH HOLDERS OF CLAIMS AND INTERESTS WILL BE UNIMPAIRED UNDER THE PLAN, AND THUS DEEMED TO ACCEPT IT, THERE WILL BE NO VOTING TO ACCEPT OR REJECT THE PLAN.**

## II.  DEFINITIONS

The following terms (which appear in this Plan as capitalized terms), when used in this Plan, have the meanings set forth below:

 **"Administrative Expense Claim"** means a claim for administrative costs or expenses that are allowable under Bankruptcy Code § 503(b) or 28 U.S.C. § 1930.  These costs or expenses may include: (a) actual, necessary costs and expenses of preserving the Debtor's Estate after the Petition Date but prior to the Effective Date; (b) Professional Fee Claims; (c) Administrative Tax Claims; and (d) fees or charges assessed against the Estate under 28 U.S.C. § 1930.

**"Administrative Expense Claims Bar Date"** means thirty (30) days after the Effective Date, with respect to Administrative Expense Claims (except for Professional Fee Claims) for

services rendered or expenses incurred from the Petition Date through the Effective Date relating to or arising out of any period after the Petition Date.

"**Administrative Expense Claims Objection Date**" means the last day for filing an objection to any request for the payment of an Administrative Expense Claim other than a Professional Fee Claim, which shall be the later of (a) sixty (60) days after the Effective Date or (b) such other date specified in this Plan or ordered by the Bankruptcy Court. The filing of a motion to extend the Administrative Expense Claims Objection Date shall automatically extend the Administrative Expense Claims Objection Date until a Final Order is entered on such motion. In the event that such motion to extend the Administrative Expense Claims Objection Date is denied by the Bankruptcy Court, the Administrative Expense Claims Objection Date shall be the later of the current Administrative Expense Claims Objection Date (as previously extended, if applicable) or thirty (30) days after the Bankruptcy Court's entry of an order denying the motion to extend the Administrative Expense Claims Objection Date.

"**Administrative Tax Claim**" means a Claim that is not an Allowed Secured Claim and that a government unit asserts against the Debtor either for taxes or for related interest or penalties for any tax period that, in whole or in part, falls within the period beginning on the date of the Petition Date and ending on the Effective Date.

"**Allowed Administrative Expense Claim**" means an Administrative Expense Claim that is allowed as set forth in Article IV.A.1 of the Plan.

"**Allowed Claim**" means a Claim, other than an Administrative Expense Claim, (i) allowed by Final Order of the Bankruptcy Court, (ii) proof of which was timely filed on or before the Claims Bar Date or (iii) if no proof of Claim has been timely filed, which has been or hereafter is listed in the Bankruptcy Schedules as liquidated in amount and not disputed or contingent, and in each such case in clauses (ii) and (iii) above, a Claim as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order. Unless otherwise specified in the Plan, an Allowed Claim does not include interest on the Claim accruing after the Petition Date. Moreover, any Claim or portion of a Claim that was or is satisfied or released during the Case is not an Allowed Claim. For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim which the Debtor may hold against the Holder thereof, to the extent that such Claim may be set off pursuant to applicable law.

"**Allowed Class '\*\*' Claim**" means an Allowed Claim in the particular class described.

"**Assets**" means all assets of the Debtor's Estate including, but not limited to, "property of the estate" as described in § 541 of the Bankruptcy Code.

"**Avoidance Action**" means any Causes of Action arising under Bankruptcy Code §§ 542, 543, 544, 547, 548, 549, 550, 551, 552, and 553 or under related state or federal statutes and common law, including without limitation all fraudulent conveyance laws, fraudulent transfer laws, and all non-bankruptcy laws vesting in creditors any and all rights to avoid, rescind, or

recover on account of transfers, whether or not litigation is commenced to prosecute such Cause of Action.

**"Bankruptcy Code"** means Title 11 of the United States Code, as now in effect or hereafter amended and as applicable to the Case.

**"Bankruptcy Court"** or **"Court"** means the United States Bankruptcy Court for the District of Columbia.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure.

**"Bankruptcy Schedules"** means the Schedules of Assets and Liabilities and Statement of Financial Affairs filed by the Debtor, as the same may have been amended from time to time.

**"Business Day"** means any day other than a Saturday, Sunday or a legal holiday (as defined in Bankruptcy Rule 9006(a)).

**"Buyer"** means the successful purchaser of the Property, SK Management, LLC.

**"Case"** means the above-captioned case commenced by the Debtor in the Bankruptcy Court, which has been designated Case No. 22-00059-ELG.

**"Cash"** means cash or cash equivalents including, but not limited to, bank deposits, checks or other similar items.

**"Causes of Action"** means any and all claims, demands, rights, actions, causes of action and suits of the Debtor and the Estate, of any kind or character whatsoever, known or unknown, suspected or unsuspected, matured or unmatured, whether arising prior to, on or after the Petition Date, in contract or in tort, at law or in equity or under any other theory of law, including but not limited to (1) rights of setoff, counterclaim or recoupment, and claims on contracts or for breaches of duties imposed by law; (2) the right to object to claims or interests; (3) claims pursuant to § 362 of the Bankruptcy Code; (4) such claims and defenses as fraud, negligence, breach of fiduciary duty, corporate waste, unlawful dividends, mistake, duress and usury; (5) all Avoidance Actions; (6) claims for tax refunds; (7) claims pursuant to § 510 of the Bankruptcy Code, and (8) § 506(c) Claims; and (9) any other claims which may be asserted against third parties.

**"Claim"** means a claim as that term is defined in Bankruptcy Code § 101(5).

**"Claims Bar Date"** means, with respect to Claims filed by Creditors other than Government Agencies, August 8, 2022, which is the last date for Creditors other than Government Agencies to file Claims against the Estate pursuant to the Notice of Chapter 11 Bankruptcy Case, and with respect to Claims filed by Government Agencies, September 27, 2022, which is the last date for Government Agencies to file Claims against the Estate pursuant to the Notice of Chapter 11 Bankruptcy Case; and with respect to Claims filed by the Debtor on behalf of Creditors, September 7, 2022 which is the last date for the Debtor to file Claims on behalf of Creditors against the Estate pursuant to Federal Rule of Bankruptcy Procedure 3004.

**"Claims Objection Deadline"** means the last day for filing objections to General Unsecured Claims, which day shall be the later of (a) thirty (30) days after the latest to occur Claims Bar Date, or (b) such other date as the Bankruptcy Court may order. The Debtor may seek a one-time automatic extension of the Claims Objection Deadline by filing a notice of extension of the Claims Objection Deadline, which shall automatically extend the Claims Objection Deadline until the date specified in such notice up to an additional thirty (30) days after the current Claims Objection Deadline. Thereafter, any further extension of the Claims Objection Deadline shall require bankruptcy court approval, and may be granted only upon a showing of exigent circumstances. In the event that such a motion to further extend the Claims Objection Deadline is denied, the Claims Objection Deadline shall be the later of the current Claims Objection Deadline (as previously extended, if applicable) or thirty (30) days after the Bankruptcy Court's entry of an order denying the motion to further extend the Claims Objection Deadline. For the avoidance of doubt, after the Effective Date, no Person other than the Debtor shall be authorized to file objections to Claims other than Professional Fee Claims.

**"Class"** means a group of Claims as classified in Article IV of the Plan.

**"Confirmation"** means the entry of an Order by the Bankruptcy Court confirming the Plan pursuant to § 1129 of the Bankruptcy Code.

**"Confirmation Date"** means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

**"Confirmation Hearing"** means the hearing regarding Plan Confirmation.

**"Confirmation Order"** means the order of the Bankruptcy Court confirming this Plan under Bankruptcy Code § 1129.

**"Debtor"** means Jefferson-11th Street, LLC

**"Disclosure Statement"** means the Disclosure Statement with Respect to the Debtor's Plan of Liquidation, as may be further amended.

**"Disclosure Statement Order"** means the order entered by the Bankruptcy Court approving, or dispensing of the need for approval of, the Disclosure Statement.

**"Disputed Claim"** means a Claim:

(a) as to which a proof of claim is filed or is deemed filed under Bankruptcy Rule 3003(b)(1) or a proof of interest is filed or is deemed filed under Bankruptcy Rule 3003(b)(2); and

(b) as to which an objection: (1) has been timely filed; and (2) has neither been overruled nor been denied by a Final Order and has not been withdrawn.

**"Distribution"** means any transfer under the Plan of Cash or other property or instruments to either a Holder of an Allowed Administrative Expense Claim or a Holder of an Allowed Claim.

**"Distribution Date"** means the first possible date for Distributions on Allowed Claims other than Administrative Expense Claims and Secured Claims, which date shall be the first business day following the later of (a) the Sale Closing Date, or (b) passage of the latest to occur Claims Bar Date.

**"Effective Date"** has the meaning set forth in Article X of the Plan.

**"Entity"** has the meaning set forth in § 101(15) of the Bankruptcy Code.

**"Estate"** means the bankruptcy estate of the Debtor.

**"Estate Parties"** means the Persons referenced in Article IX.B of the Plan.

**"Executory Contracts"** means those agreements or obligations which are not fully performed by the Debtor and are subject to assumption or rejections pursuant to §365 of the Bankruptcy Code.

**"Final Fee Applications"** means the final requests or applications for payment of Professional Fee Claims.

**"Final Order"** means an order or judgment of a court of competent jurisdiction entered on such court's official docket:

(a) that has not been reversed, rescinded, stayed, modified, or amended;

(b) that is in full force and effect; and

(c) with respect to which: (1) the time to appeal or to seek review, remand, rehearing, or a *writ of certiorari* has expired and as to which no timely filed appeal or petition for review, rehearing, remand, or *writ of certiorari* is pending; or (2) any such appeal or petition has been dismissed or resolved by the highest court to which the order or judgment was appealed or from which review, rehearing, remand, or a *writ of certiorari* was sought.

**"General Unsecured Claim"** means a Claim that is not an Administrative Expense Claim, a Priority Tax Claim, a Non-Tax Priority Claim, or a Secured Claim.

**"Governmental Agency(y)(ies)"** means any department or agency of the United States of America or any state, including quasi-governmental agencies, acting through, or funded by any such department or agency, through state or federal government charter, or otherwise.

**"Holder"** means the holder of a Claim or interest.

**"Insider"** means an insider as that term is defined in Bankruptcy Code § 101(31).

**"Litigation Claims"** means all Claims held by the Tenant Parties (as that term is defined by that certain Settlement Agreement on this Court's docket at 195-1) against the Debtor and its principals.

**"Local Rules"** means the Local Bankruptcy Rules for the Bankruptcy Court, as now in effect or hereafter amended and applicable to the Case.

**"Non-Tax Priority Claim"** means a Claim, other than and without duplication of an Administrative Expense Claim or Priority Tax Claim, which is entitled to priority in payment pursuant to Bankruptcy Code §§ 507(a)(3), (4), (5), or (7).

**"Person"** means any natural person or Entity.

**"Petition Date"** means March 31, 2022

**"Plan"** means this Debtor's Amended Chapter 11 Plan, as it may be further amended or supplemented.

**"Plan Document"** means this Plan, and any Exhibits thereto.

**"Plan Participants"** means the persons entitled to exculpation as provided in Article IX of the Plan.

**"Post-Effective Date Expenses"** means any expenses incurred by the Debtor after the Effective Date including, but not limited to, professional fees and expenses incurred by the Debtor, fees payable to the United States Trustee, and premiums related to any bond or insurance policy, and reasonable expenses incurred by the Debtor in the ordinary course of business.

**"Post-Petition"** means the time after the Petition Date.

**"Priority Tax Claim"** means a Claim entitled to priority against the Debtor under Bankruptcy Code § 507(a)(8), or which is secured by the Assets of the Debtor.

**"Professional Fee Claim"** means a Claim under Bankruptcy Code §§ 326, 327, 328, 330, 331, 503(b), or 1103 for compensation for services rendered by any of the Professionals, or related expenses, incurred after the Petition Date but prior to the Effective Date on behalf of the Estate.

**"Professionals"** means the professionals (attorneys, accountants, appraisers, financial advisors, and the like) employed by the Estate with the approval of the Bankruptcy Court at the expense of the Estate pursuant to §§ 327 and/or 328 of the Bankruptcy Code.

**"Property"** means the Debtor's real property located at 2724 11th Street, NW Washington D.C. 20001 and described as Square 2859/Lot 0089 with all improvements thereon and rights associated therewith.

**"Receiver"** means Benjamin Gilmore.

**"Receiver Order"** means the Order entered on November 17, 2017 in Consolidated Case Nos.2016 CA 8084 B and 2017 CA 2837 2 in the District of Columbia Superior Court and titled "Order Appointing Receiver."

**"Rejection Damage Claim"** means a Claim for damages arising under an unexpired lease of real or personal property or an executory contract that the Debtor rejects under Bankruptcy Code § 365 or pursuant to the terms of this Plan.

**"Sale"** means a sale of the Property, which given the single asset real estate nature of the bankruptcy case, will effect a sale of substantially all of the assets of the Debtor.

"**Sale Closing Date**" means the date of the closing of the Sale.

**"Sales Proceeds"** means net proceeds of the sale of the Property after payment of costs of sale.

**"Section 506© Claim"** means any surcharge claim asserted by the Debtor after the Effective Date pursuant to § 506© of the Bankruptcy Code.

**"Secured Claim"** means a Claim that is secured by a valid and unavoidable lien against property in which an Estate has an interest or that is subject to setoff under Bankruptcy Code § 553. A Claim is a Secured Claim only to the extent of the value of the claimholder's interest in the collateral securing the Claim or to the extent of the amount subject to setoff, whichever is applicable, and as determined under Bankruptcy Code § 506(a).

"**Tenant**" means a party to a lease with the Debtor under which the Debtor is or was a landlord, and from whom the Receiver has been paying rent in the past three years.

"**Tenant Lease**" means any agreement between the Debtor and any Tenant for the lease of real property, which is in effect as of the Effective Date.

"**Unclaimed Property**" means any Cash or other property which is unclaimed for sixty (60) days after its Distribution.

**"U.S. Trustee"** means the Office of the United States Trustee.

## III.   RULES OF INTERPRETATION

The rules of construction in Bankruptcy Code § 102 apply to this Plan.

1.     A capitalized term that is used in this Plan and that is not defined in this Plan has the meaning attributed to that term, if any, in the Bankruptcy Code or the Bankruptcy Rules.

2.       The definition given to any term or provision in the Plan supersedes and controls any different meaning that may be given to that term or provision in the Bankruptcy Code, the Bankruptcy Rules or the Disclosure Statement.

3.       Whenever it is appropriate from the context, each term, whether stated in the singular or the plural, includes both the singular and the plural.

4.       Any reference to a document or instrument being in a particular form or on particular terms means that the document or instrument will be substantially in that form or on those terms.

5.       Any reference to an existing document means the document as it has been, or may be, amended or supplemented.

6.       Unless otherwise indicated, the phrase "in the Plan," "in this Plan," "under the Plan," "under this Plan," and similar words or phrases refer to this Plan in its entirety rather than to only a portion of the Plan.

7.       Unless otherwise specified, all references to Articles or Exhibits are references to this Plan's Articles or Exhibits.

8.       Article captions and headings are used only as convenient references and do not affect this Plan's meaning.

9.       Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) and except as otherwise provided herein or therein, the laws of the District of Columbia shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan.

10.      All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein.

## IV.       CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

The Plan divides Creditors into Classes based on their legal rights and interests and provides for the satisfaction of Claims from the sale of the Property. This Article classifies Claims, except for Administrative Expense Claims and Priority Tax Claims, which are not classified, for all purposes, including confirmation and distribution under the Plan. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest falls within the Class description. To the extent that part of the Claim or Interest falls within a different Class description, the Claim or Interest is classified in that different Class. The following table summarizes the Classes of Claims and Interests under this Plan.

| **CLASS** | **DESCRIPTION** | **IMPAIRED/ UNIMPAIRED** | **VOTING STATUS** |
|---|---|---|---|
| Class 1 | Non-Tax Priority Claims | Unimpaired | Not Entitled to Vote, Deemed to Accept |
| Class 2 | Secured Claims of Municipal Authorities and Utility Lienholders | Unimpaired | Not Entitled to Vote, Deemed to Accept |
| Class 3 | Secured Claim of Tenants | Unimpaired | Not Entitled to Vote, Deemed to Accept |
| Class 4 | General Unsecured Claims | Unimpaired | Not Entitled to Vote, Deemed to Accept |
| Class 5 | Litigation Claims | Unimpaired | Not Entitled to Vote, Deemed to Accept |
| Class 6 | Insider Claims | Unimpaired | Not Entitled to Vote, Deemed to Except |
| Class 7 | Interests | Unimpaired | Not Entitled to Vote, Deemed to Accept |

The treatment in this Plan is in full and complete satisfaction of all of the legal, contractual, and equitable rights that each Holder of an Allowed Claim may have in or against the Debtor, the Estate or its property. This treatment supersedes and replaces any agreements or rights those Holders have in or against the Debtor, the Estate or property of the Debtor or the Estate. All Distributions under the Plan will be tendered to the Person holding the Allowed Claim. **EXCEPT AS SPECIFICALLY SET FORTH IN THIS PLAN, NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM THAT IS NOT AN ALLOWED CLAIM.**

A.  **Allowance of Unclassified Claims (Administrative Expense Claims and Priority Tax Claims)**

Persons that hold Administrative Expense Claims and that do not timely file and serve a motion or application seeking payment in accordance with this Article and the Bankruptcy Code will be forever barred from asserting those Administrative Expense Claims.

1.  Allowed Administrative Expense Claims Other than Professional Fee Claims

An Administrative Expense Claim that is not a Professional Fee Claim will be allowed only if, on or before the Administrative Expense Claim Bar Date, the Person holding the Claim

both filed with the Bankruptcy Court a motion or application requesting that the Debtor pay the Claim and served the motion or application on the Debtor and the U.S. Trustee. Persons seeking allowance of an Administrative Expense Claim under this paragraph shall be required to file a notice that the deadline to object to such allowance shall be the Administrative Expense Claims Objection Deadline. Provided, however, that the Debtor may elect to deem an Administrative Expense Claim (other than a Professional Fee Claim) incurred in the ordinary course of the Debtor's business to be treated as an Allowed Administrative Expense Claim in accordance with the terms and conditions of the particular transaction that gave rise to the Claim without requiring the Person holding such Administrative Expense Claim to file a request for payment.

Any objection to an Administrative Expense Claim must be filed by the Administrative Expense Claims Objection Deadline. In the event that an objection is timely filed to an Administrative Expense Claim, the Bankruptcy Court shall determine the allowed amount of such Administrative Expense Claim.

### 2. Allowed Professional Fee Claims

Final Fee Applications must be filed no later than forty-five (45) days after the Effective Date. Final Fee Applications will be noticed in accordance with the Bankruptcy Rules and Local Rules. Objections, if any, shall be filed in accordance with the Bankruptcy Rules and Local Rules and served on the Professional whose Final Fee Application is being objected to, the Debtor, and the Office of the U.S. Trustee. Failure to properly object to a Final Fee Application constitutes a waiver of a party's right to object to a Final Fee Application.

### 3. Allowed Priority Tax Claims

The Claim of any Person holding a Priority Tax Claim will be allowed only if such Person filed a Claim prior to the Claims Bar Date and no objection to the Priority Tax Claim is filed by the Claims Objection Deadline.

In the event that an objection is timely filed to a Priority Tax Claim, the Bankruptcy Court shall determine the allowed amount of such Priority Tax Claim. In the event that no objection is timely filed to an otherwise properly filed Priority Tax Claim, such Priority Tax Claim shall be deemed allowed in the amount requested.

## B. **Treatment of Unclassified Claims (Administrative Expense Claims and Priority Tax Claims)**

### 1. Administrative Expense Claims

Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment, each holder of an Allowed Administrative Expense Claim shall receive from the Debtor, in full and complete settlement, satisfaction and discharge of its Allowed Administrative Expense Claim, on the later to occur of (i) the Sale Closing Date (or as soon as reasonably practicable thereafter) and (ii) the date on which such Claim shall become an Allowed Claim, Cash equal to the unpaid portion of such Allowed Expense Administrative Claim; provided,

however, that Allowed Administrative Expense Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Case may be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto by the Debtor. Holders of Administrative Claims will be paid in full on account of their Claims and are not entitled vote on this Plan.

2. Priority Tax Claims

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive from the Debtor, in full and complete settlement, satisfaction and discharge of its Allowed Priority Tax Claim, Cash in an amount equal to such Allowed Priority Tax Claim, with post-petition interest at the Federal Judgment Rate in effect on the Petition Date on, or as soon thereafter as is reasonably practicable, the later of the Distribution Date and the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim.

## C. Classified Claims

1. Classification and Treatment of Non-Tax Priority Claims (Class 1)

**Classification:** Class 1 consists of all Non-Tax Priority Claims.

**Treatment:** Provided that a Non-Tax Priority Claim has not been paid prior to the Distribution Date, and except to the extent that a holder of a Non-Tax Priority Claim agrees to a different treatment, each holder of an Allowed Non-Tax Priority Claim shall receive from the Debtor, in full and complete settlement, satisfaction and discharge of its Allowed Non-Tax Priority Claim, on the later to occur of (i) the Distribution Date (or as soon as reasonably practicable thereafter) and (ii) the date on which such Claim shall become an Allowed Claim, Cash equal to the unpaid portion of such Allowed Non-Tax Priority Claim, with post-petition interest at the Federal Judgment Rate in effect on the Petition Date. Class 1 is unimpaired under this Plan and is conclusively presumed to have accepted this Plan and, therefore, Holders of Class 1 Claims are not entitled to vote to accept or reject this Plan.

The Debtor does not believe there are any holders of Non-Tax Priority Claims.

2. Classification and Treatment of Secured Claims of Municipal Authorities and Utility Lienholders (Class 2)

**Classification:** Class 2 consists of the Secured Claims of Municipal Authorities and Utility Lienholders.

**Treatment:** Except to the extent that a holder of an Allowed Class 2 Claim agrees to a different and lesser treatment, each holder of an Allowed Class 2 Claim shall receive from the Debtor, in full and complete settlement, satisfaction and discharge of its Allowed Class 2 Claim, on the later to occur of (i) the Sale Closing Date (or as soon as reasonably practicable thereafter) and (ii) the date on which such Claim shall become an Allowed Claim, payment in full, with post-petition interest at the Federal Judgment Rate in effect on the Petition Date.

Holders of Class 2 Claims will retain their liens until the Property is sold.

Holders of Class 2 Claims are unimpaired and are not entitled to vote to accept or reject this Plan.

3.    Classification and Treatment of Secured Claim of Tenants
       (Class 3)

**Classification:** Class 3 consists of the Secured Claim of Tenants.

**Treatment:** Except to the extent that a holder of an Allowed Class 3 Claim agrees to a different and lesser treatment, each holder of an Allowed Class 3 Claim shall receive from the Debtor, in full and complete settlement, satisfaction and discharge of its Allowed Class 3 Claim, on the Sale Closing Date (or as soon as reasonably practicable thereafter), payment in full of its Allowed Class 3 Claim, with post-petition interest at the appropriate judgment interest rate under the loan documents.

Holders of Class 3 Claims will retain their liens until the Property is sold.

Holders of Class 3 Claims are unimpaired and are not entitled to vote to accept or reject this Plan.

4.    Classification of General Unsecured Claims (Class 4)

**Classification:** Class 4 consists of holders of General Unsecured Claims.

**Treatment:** Except to the extent that a holder of an Allowed Class 4 Claim agrees to a different and lesser treatment, each holder of an Allowed Class 4 Claim shall receive from the Debtor, in full and complete settlement, satisfaction and discharge of its Allowed Class 4 Claim, on the later to occur of (i) the Distribution Date (or as soon as reasonably practicable thereafter) and (ii) the date on which such Claim shall become an Allowed Claim, payment in full, with post-petition interest at the Federal Judgment Rate in effect on the Petition Date.

Holders of Class 4 Claims are unimpaired and are not entitled to vote to accept or reject this Plan.

5.      <u>Classification of Litigation Claims (Class 5)</u>

**<u>Classification</u>**:      Class 5 consists of Litigation Claims.

**<u>Treatment:</u>**      Except to the extent that a holder of an Allowed Class 5 Claim agrees to a different and lesser treatment, each holder of an Allowed Class 5 Claim shall receive from the Debtor, in full and complete settlement, satisfaction and discharge of its Allowed Class 5 Claim, the treatment set forth in the Settlement Agreement on this Court's docket at 195-1.

Holders of Class 5 Claims are unimpaired and are not entitled to vote to accept or reject this Plan.

6.      Classification of Insider Claims (Class 6)

**<u>Classification:</u>**      Class 6 consists of holders of Claims held by Insiders

**<u>Treatment:</u>**      Except to the extent that a holder of an Allowed Class 6 Claim agrees to a different and lesser treatment, each holder of an Allowed Class 4 Claim shall receive from the Debtor, in full and complete settlement, satisfaction and discharge of its Allowed Class 6 Claim, on the later to occur of (i) the Distribution Date (or as soon as reasonably practicable thereafter) and (ii) the date on which such Claim shall become an Allowed Claim, payment in full, with post-petition interest at the Federal Judgment Rate in effect on the Petition Date.

Class 6 Claims shall be subordinated to Claims in Classes 1 through 5, and shall not receive any payment until all Classes 1 through 5 are either allowed or disallowed by Final Order, and if allowed, are paid in full.

Holders of Class 6 Claims are unimpaired and are not entitled to vote to accept or reject this Plan.

7.      Classification of Interests (Class 7)

**<u>Classification:</u>**      Class 7 consists of Holders of Interests.

**<u>Treatment:</u>**      Each member of the Debtor shall be entitled to keep their respective equity interests in the Debtor.

Holders of Interests are unimpaired and not entitled to vote to accept or reject this Plan.

## V. ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR INTERESTS

### A. No Impaired Classes to Vote

The Plan is intended to pay all Holders of Claims in full and allow all Holders of Interests to retain their interests. As a result, each Class of Claims or Interests is unimpaired under the Plan, and there are no impaired Classes under the Plan. Accordingly, all Classes are deemed to accept the Plan and no Class shall be entitled to vote to accept or reject the Plan.

### B. Cramdown

The Debtor reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with § 1129(b) of the Bankruptcy Code or amend the Plan in accordance with § 1129(a) of the Bankruptcy Code in the event that any Class of Claims is determined to be impaired, rather than unimpaired, and subsequently fails to accept the Plan in accordance with § 1129(a) of the Bankruptcy Code.

## VI. PLAN IMPLEMENTATION

### A. Revesting of Property of the Estate

All remaining property of the Estate shall revest in the Debtor on the Effective Date, free and clear of all other liens, claims, interests and encumbrances, and the liens of the Tenants and the District of Columbia specifically granted by this Plan.

### B. Plan Objectives

The Debtor proposes to satisfy all of its debts and pay all of its creditors via a sale of the Property, the approval of which is sought pursuant to this Plan, as supported by a separate Motion to Sell . The sale of the Property will be free and clear of all liens, claims, encumbrances and other interests pursuant to § 363(f) of the Bankruptcy Code and on an "as is, where is" basis, without representations or warranties of any kind, nature or description. Counsel for the Debtor will collect the Sales Proceeds as a fiduciary, although the scope of such fiduciary duties shall be limited exclusively to distributing the funds to the claim or equity holders in accordance with the Plan. The approval of Counsel for the Debtor as a disbursing agent will be approved by the Court in the Confirmation Order.

### C. Sale of the Property

The real estate broker John M. (Marty) Zupancic III of Marcus & Millichap Real Estate Investment Services of North Carolina, Inc. as realtors ("Realtors") have presented a number of

offers for the Property to the Debtor and the Tenants and the District of Columbia.  The Debtor, in consultation with the Tenants and the District of Columbia, have selected SK Management, LLC as the Buyer.  The Property will be sold to the Buyer pursuant to the Contract of Sale on this Court's docket at 190-1.

Approval of the sale of the Property is sought pursuant to confirmation of the Plan.  Sale of the Property is to be free and clear of all liens and interests, with all liens and interests attaching to the Sale Proceeds in the order and amount that they attached to the Property.  The Sale will be free and clear of the Receiver Order.  The sale has been  subject to notice and hearing requirement of the Bankruptcy Code, Bankruptcy Rules and the Local Rules of the Bankruptcy Court.  The Debtor anticipates sale subject to an Order of the Bankruptcy Court approving the sale 1) pursuant to this Plan and  2) through a separate motion authorizing sale free and clear of liens.  The Property will be sold in its "as-is" condition as of the date of closing.  No sale commission will be due except upon successful sale and settlement.  The Tenants have no rights under the Tenant Opportunity to Purchase Act ("TOPA") because this is a sale through a Chapter 11 bankruptcy process and plan.

The sale will not be subject to the leases of the Tenants as the Debtor and its principals have reached a settlement with the Tenants and the Tenants have all vacated the Property or are in process of doing so.

## D.       Retention of Professionals

On the Effective Date, the Debtor shall be allowed, without further order of the Bankruptcy Court, to employ and compensate professionals, including, but not limited to, counsel, expert witnesses, accountants, appraisers, consultants, and financial advisors, as needed to assist it in fulfilling its obligations under the Plan, and on whatever fee arrangement it deems appropriate, including, without limitation, hourly fee arrangements and contingency fee arrangements. Professionals engaged by the Debtor after the Effective Date shall not be required to file applications for compensation in order to receive the compensation provided for herein.  If the Debtor has any objection to an application for compensation submitted to it by a Professional, the Debtor and the Professional which has submitted the application may file a motion with the Bankruptcy Court to decide the matter.

## E.       Operation of Business

Upon confirmation of this Plan, as may be modified from time to time, the Debtor shall be free to, in a manner not inconsistent with this Plan or any Order issued by the Bankruptcy Court, to (1) pay Post-Effective Date Expenses without restriction, (2) operate its business without restriction, except the Receiver will remain in control of the Property until sale of the Property.

# VII. DISTRIBUTIONS

## A. Distribution of Property Under the Plan

### 1. Source of Distributions

The sources of all Distributions and payments under this Plan are the Sale Proceeds.

### 2. Manner of Cash Payments

Cash payments to domestic entities holding Allowed Claims will be denominated in U.S. dollars and will be made by checks drawn on a domestic bank selected by the Debtor or, at the Debtor's option, by wire transfer from a domestic bank. Cash payments to foreign entities holding Allowed Claims may be paid, at the Debtor's option, either in the same manner as payments to domestic entities or in any funds and by any means that are necessary or customary in the particular foreign jurisdiction.

### 3. Setoff and Recoupment

Notwithstanding anything to the contrary in this Plan, the Debtor may set off, recoup, or withhold against the Distributions to be made on account of any Allowed Claim any claims that the Debtor or the Estate may have against the claimant or the Person holding the Allowed Claim. The Debtor does not and shall not be deemed to waive or release any claim against those Persons by failing to effect such a setoff or recoupment, by the allowance of any claim against the Debtor or the Estate, or by making a Distribution on account of an Allowed Claim. In addition, the settlement or adjudication of any Avoidance Action shall not bar the Debtor from filing a subsequent objection to Claim. The Debtor may assert all of the same rights and defenses, including all setoff rights and rights under § 502(d) of the Bankruptcy Code, with respect to any Claim held by an Assignee of a Claim as it could against the original Holder of the Claim.

### 4. Interest on Claims

Unless otherwise specifically provided for in this Plan, the Confirmation Order, any order of this Court, or required by applicable bankruptcy law, Post-Petition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date.

### 5. Withholding and Reporting Requirements

In connection with this Plan and all Distributions under this Plan, the Debtor shall, to the extent applicable, comply with all tax withholding, payment, and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all Distributions under this Plan shall be subject to any such withholding, payment, and reporting requirements. The Debtor shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment and reporting requirements. All amounts properly withheld from Distributions to a Holder as required by applicable law and paid over to the applicable taxing

authority for the account of such Holder shall be treated as part of the Distributions to such Holder. All Holders shall be required to provide any information necessary to effect information reporting and withholding of such taxes, including but not limited to taxpayer identification numbers. Notwithstanding any other provision of this Plan, each Holder of an Allowed Claim that is to receive a Distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such Distribution. The Debtor may require any Creditor to provide a completed form W-8 or W-9 IRS tax form or otherwise furnish to the Debtor its tax identification number as assigned by the IRS and the Debtor may condition any distribution to any Creditor upon receipt of such tax identification number.

6.     No *De Minimus* Distributions

Notwithstanding anything to the contrary in the Plan, no Cash payment of less than $10.00 will be made by the Debtor to any Person holding an Allowed Claim. No consideration will be provided in lieu of the *de minimus* Distributions that are not made under this Article.

7.     Fractional Dollars

Any other provision of this Plan notwithstanding, the Debtor shall not be required to make Distributions or payments of fractions of dollars. Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, the actual payment may reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down.

8.     No Distributions With Respect to Disputed Claims

Notwithstanding any other Plan provision, Distributions will be made on account of a Disputed Claim only after, and only to the extent that, the Disputed Claim becomes an Allowed Claim, **provided, however**, that if the only dispute regarding a Disputed Claim is to the amount of the Disputed Claim, the Holder of a Disputed Claim shall be entitled to receive a Distribution on account of that portion of the Disputed Claim, if any, which the Debtor does not dispute, which Distribution shall be made by the Debtor at the same time and in the same manner that such Debtor makes Distributions to Holders of similar Allowed Claims pursuant to the provisions of the Plan. The Debtor may, in its discretion, withhold Distributions otherwise due and payable by the Debtor hereunder to any applicable Holder of a Claim until the Claims Objection Deadline, to enable a timely objection thereto to be filed. A Claim of any Person from which property may be recoverable under § 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer that may be avoidable under § 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be a Disallowed Claim unless and until the Person or transferee has paid the amount or turned over the property for which such Person or transferee is liable. Any Holder of a Claim that becomes an Allowed Claim after the Effective Date will receive its Distribution in accordance with the terms and provisions of this Plan. Counsel for the Debtor shall hold 115% of the amounts of all Disputed Claims in escrow until such Disputed Claim is resolved.

9.  Undeliverable or Unclaimed Distributions

Subject to subparagraphs 1-8 above, Distributions to Persons holding Allowed Claims will initially be made by mail as follows:

a.  distributions will be sent to the address, if any, set forth on a filed proof of claim as amended by any written notice of address change received by the Debtor; or

b.  if no such address is available, Distributions will be sent to the address set forth on the Bankruptcy Schedules.

If no address is available either on a proof of claim or on the Bankruptcy Schedules, the Distribution will be deemed to be undeliverable. If a Distribution by check remains uncashed past the date upon which the check becomes stale, the Distribution will be deemed to be undeliverable. If a Distribution is returned to the Debtor as an undeliverable Distribution or is deemed to be an undeliverable Distribution, the Debtor will make no further Distribution to the Person holding the Claim on which the Distribution is being made unless and until the Debtor is timely notified in writing of that Person's current address. Subject to the following paragraph, until they become deliverable, the Debtor may, in its discretion, create a Plan Reserve for undeliverable Distributions for the benefit of the Persons entitled to the Distributions. These Persons will not be entitled to any interest on account of the undeliverable Distributions.

Any Person that is otherwise entitled to an undeliverable Distribution and that does not, within the later of six months after the Effective Date, or sixty (60) days after a Distribution is returned to the Debtor as undeliverable, or is deemed to be an undeliverable Distribution, provide the Debtor with a written notice asserting its claim to or interest in that undeliverable Distribution and setting forth a current, deliverable address will be deemed to waive any claim to or interest in that undeliverable Distribution and will be forever barred from receiving that undeliverable Distribution or asserting any Claim related thereto against the Debtor and the Estate. Nothing in the Plan requires the Debtor to attempt to locate any Person holding an Allowed Claim and whose Distribution is undeliverable.

## VIII.  LITIGATION

## A.  **Preservation of Causes of Action and Defenses**

Except as otherwise expressly provided in this Plan, on the Effective Date, all property of the Estate, including, but not limited to, all claims, rights, defenses, Causes of Action of the Debtor, shall vest in the Debtor, free and clear of all liens, Claims, charges or other encumbrances.

Unless expressly waived, released or settled in the Plan or any Final Order, the Debtor shall retain, and may exclusively enforce, any and all claims, rights, defenses and Causes of Action (including without limitation, claims, rights, defenses and Causes of Action not specifically identified, or which the Debtor may presently be unaware of, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor, at this time, or facts or circumstances

which may change or be different from those which the Debtor believes to exist), whether arising before or after the Petition Date, in any court or tribunal, including but not limited to the Bankruptcy Court. The Debtor, is authorized to exercise and perform the rights, powers and duties held by the Debtor's Estate, including without limitation the authority under Bankruptcy Code § 1123(b)(3) to provide for the settlement, adjustment, retention and enforcement of claims, rights, defenses and Causes of Action. The Debtor shall further have the power, and may exercise discretion, to institute, prosecute, abandon, settle, or compromise any and all such claims, rights, defenses and Causes of Action, and shall not be required to seek Bankruptcy Court approval of such decisions. All Causes of Action are specifically preserved.

## B.    Preclusion Doctrines

No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall apply to such claims, rights, defenses or Causes of Action upon, or after, the Confirmation or consummation of the Plan based on the Disclosure Statement, the Plan, or the Confirmation Order, except where such claims, rights, defenses or Causes of Action have been specifically released in the Plan or other Final Order. No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall prevent the Debtor from objecting to any Claim, except where such Claim is specifically allowed in the Plan or other Final Order.

No one may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any claim, right, defense or Cause of Action against them as an indication that the Debtor will not pursue any and all available claims, rights, defenses, or Causes of Action against them. The Confirmation Order shall not bar the Debtor by res judicata, collateral estoppel, or otherwise from collecting, prosecuting, settling, or defending any claim, right, defense, or Cause(s) of Action.

**THE DEBTOR WILL MAKE THE DECISION TO PURSUE, NOT PURSUE OR SETTLE VARIOUS CAUSES OF ACTION IN ITS DISCRETION WITH THE ADVICE OF COUNSEL. THIS DECISION MAY BE BASED ON MANY FACTORS, INCLUDING BUT NOT LIMITED TO THE MERITS OF THE VARIOUS CAUSES OF ACTION AND THE COSTS REQUIRED TO PROSECUTE SUCH CAUSES OF ACTION. AS SET FORTH IN ARTICLE IX OF THE PLAN, THE DEBTOR AND ITS PROFESSIONALS, REPRESENTATIVES, SUCCESSORS AND ASSIGNS SHALL NOT HAVE ANY LIABILITY ARISING OUT OF THE DEBTOR'S GOOD FAITH DETERMINATION OF WHETHER OR NOT TO PURSUE PROSECUTION OR SETTLEMENT OF ANY CAUSE OF ACTION.**

## IX.    EXCULPATION

### A.    Limitation of Liability in Connection with the Case, the Plan, Disclosure Statement and Related Documents

Pursuant to § 1125(e) of the Bankruptcy Code, the Debtor and its professionals, representatives, successors, and assigns (collectively, the "Plan Participants") will neither have nor incur any liability to any Person for any act taken or omitted to be taken in connection with or related to the Case, including, but not limited to, the formulation, preparation, dissemination, negotiation, implementation, confirmation or consummation of the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement, pleading or document created or entered into, the pursuit, non-pursuit or settlement of Causes of Action or any other act taken or omitted to be taken in connection with or for the purpose of carrying out the Plan, the Disclosure Statement, the Confirmation Order or related agreement, including solicitation of acceptances of the Plan ("Exculpated Conduct"); *provided*, *however*, that no Person shall be relieved of liability for fraud, gross negligence, intentional misconduct or the willful violation of federal or state securities laws or the Internal Revenue Code.

The Plan provides that all Persons are permanently enjoined from commencing, or continuing in any manner, any action or proceeding against any of the Plan Participants, whether directly, derivatively, on account of or respecting any Claim, debt, right, or cause of action based in whole or in part upon any Exculpated Conduct. Any Plan Participant injured by any willful violation of the injunctions provided in the Plan shall recover from the willful violator actual damages (including costs and attorneys' fees) and, in appropriate circumstances, punitive damages.

### B.    Injunction against Suing the Debtor, the Estate, and Estate Parties

**Unless otherwise provided herein or the Confirmation Order, all injunctions or stays provided for in the Case pursuant to §§ 105, 362 or 525 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, will remain in full force and effect until the Effective Date.**

**As of the Effective Date, all Persons that have held, hold, or may hold Claims (including, but not limited to, Administrative Expense Claims) are enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind on account of any such Claim, Administrative Expense Claim against the Debtor, and its professionals, representatives, successors and assigns (the "Estate Parties"), including, but not limited to, any Claims, Administrative Expense Claims based upon any act or omission, transaction, or other activity of any kind, type or nature that occurred in connection with the Case prior to the Confirmation Date; (ii) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Estate Parties arising from any matter related to the Case; (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Estate Parties or against the property, or interests in property, of the Estate Parties with respect to any such Claims (including, but not limited to, Administrative Expense Claims); and (iv) asserting any**

defense or right of setoff, subrogation, or recoupment of any kind against any obligation due from the Estate Parties or against the property, or interests in property, of the Estate Parties with respect to any such Claim (including, but not limited to, Administrative Expense Claims), except that holders of Administrative Expense Claims may file requests for allow of Administrative Expense Claims by the Administrative Expense Claims Bar Date and holders of Claims may file proofs of claim by the applicable Claims Bar Date.

Upon the completion of all plan payments to Creditors pursuant to this Plan, by Court Order, all of the remaining claims asserted against the Debtor by Creditors in each class included the Plan, shall be, to the fullest extent permitted by § 1141 of the Bankruptcy Code, satisfied, settled, released and discharged as against the Debtor, for any debt that arose before the Confirmation Date and any debt of a kind specified in §§ 502 and 503 of the Bankruptcy Code and all claims of any nature, whether or not (i) a proof of claim based on such debt or obligation is filed or deemed filed under § 501 of the Bankruptcy Code, (ii) such Claim is allowed under § 502 of the Bankruptcy Code, or (iii) the holder of such Claim has accepted the Plan. Accordingly, upon the entry of the Discharge, all persons or entities which could have been claimants, and all actual claimants listed herein, shall be precluded from asserting any Claim against Debtor, based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, and the Confirmation Order shall permanently enjoin all such person or entities, and their successors and assigns, from enforcing or seeking to enforce any such Claim against the Debtor.

For the avoidance of doubt, and notwithstanding any other provision contained in the Plan or the Confirmation Order, nothing in the Plan or the Confirmation Order shall release or enjoin the prosecution of any claims or Causes of Action by the Debtor or the Estate.

## X.     OTHER PLAN PROVISIONS

### A.     Conditions to Confirmation

The following are conditions precedent to the occurrence of the Confirmation Date, each of which must be satisfied or waived in writing in accordance with Article X.C:

1.      An order finding that the Disclosure Statement contains adequate information pursuant to Bankruptcy Code § 1125, or an order dispensing with the need for approval of the Disclosure Statement shall have been entered by the Bankruptcy Court; and

2.      A Confirmation Order in form and substance, reasonably acceptable to the Debtor shall have been entered by the Bankruptcy Court.

### B.     The Effective Date

This Plan will not be consummated or become binding unless and until the Effective Date Occurs. The Effective Date will be the first Business Day after the following conditions have been satisfied:

1. Fourteen (14) days have passed since the Confirmation Date;

2. The Confirmation Order is not stayed; and

3. The Confirmation Order authorizes the sale of the Property free and clear of all liens and interests.

The Debtor will file a notice with the Bankruptcy Court that the Effective Date has occurred.

## C. **Waiver of Conditions**

Each of the conditions set forth in Articles X.A and X.B of this Plan, except for entry of the Confirmation Order, as set forth in Article X.A of this Plan, may be waived in whole or in part by the Debtor. For the avoidance of doubt, absent a stay pending appeal, the pendency of any appeal of the Confirmation Order shall not cause the delay of the Effective Date. The failure to satisfy or waive any condition to the Effective Date may be asserted by the Debtor as a basis to not consummate this Plan regardless of the circumstances giving rise to the failure of such condition to be satisfied. The failure of the Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

## D. **Consequences of Non-Occurrence of Effective Date**

In the event that the Effective Date does not timely occur, the Debtor reserves all rights to seek orders from the Bankruptcy Court directing that the Confirmation Order be vacated, that this Plan be null and void in all respects, and/or that any settlement of Claims provided for in this Plan be null and void. Notwithstanding the forgoing, the portion of the Confirmation Order approving any sale of the Property will remain effective. In the event that the Bankruptcy Court shall enter an order vacating the Confirmation Order, the time within which the Debtor may assume and assign or reject all executory contracts and unexpired leases not previously assumed, assumed and assigned, or rejected, shall be extended for a period of thirty (30) days after the date the Confirmation Order is vacated, without prejudice to further extensions.

## E. **Executory Contracts and Unexpired Leases**

1. Assumption/Rejection of Executory Contracts and Unexpired Leases

Pursuant to § 365 of the Bankruptcy Code, the Debtor seeks to reject all Leases and Executory Contracts. On the Effective Date, the Confirmation Order will constitute a Court order approving this rejection pursuant to § 365(a) of the Bankruptcy Code, subject to and as of the Sale Closing Date.

2. Bar Date for Rejection Damage Claims

Any Rejection Damage Claims arising from the rejection under the Plan of an Executory Contract or Lease must be filed with the Court and served on the Debtor and its counsel within

the later of (a) thirty (30) days after the Effective Date, or (b) the Claims Bar Date. Any Rejection Damage Claims that are not timely filed and served will be forever barred and unenforceable and the Persons holding these Claims will be barred from receiving any Distributions under the Plan on account of their Rejection Damage Claims. The Debtor reserves the right to object to any such Rejection Damage Claims; provided, however, that any such objections must be served and filed not later than the Claims Objection Deadline.

## F.  **Indemnification Obligations**

Except as otherwise provided in this Plan or any contract, instrument, release, or other agreement or document entered into in connection with this Plan, any and all indemnification obligations that the Debtor has pursuant to a contract, instrument, agreement, certificate of incorporation, by-law, comparable organizational document or any other document, or applicable law, shall be rejected as of the Effective Date, to the extent executory. Nothing in this Plan shall be deemed to release the Debtor's insurers from any claims that might be asserted by counter-parties to contracts or agreements providing the indemnification by and of the Debtor, to the extent of available coverage.

## G.  **Substantial Consummation and Entry of a Final Decree**

Substantial consummation of the Plan will not occur prior to the first Distributions on Allowed Claims other than Administrative Expense Claim and Secured Claims following the Distribution Date. Promptly following (a) occurrence of the Effective Date; (b) the passage of the applicable Claims Bar Dates in the case, and (c) the first Distributions on Allowed Claims other than Administrative Expense Claim and Secured Claims following the Distribution Date, the Debtor may file a motion with the Bankruptcy Court to obtain the entry of a final decree.

## H.  **United States Trustee Fees and Reports**

Pursuant to § 1129(a)(12) of the Bankruptcy Code, any outstanding quarterly fees due and owing to the Office of the United States Trustee under 28 U.S.C. § 1930(a)(6) shall be paid on the Effective Date. After the Confirmation Date, the Debtor shall file post-confirmation quarterly disbursement reports and pay all quarterly fees to the Office of the United States Trustee which are required by applicable law until the case is closed.

## I.  **Post-Effective Date Effect of Evidences of Claims**

Commencing on the Effective Date, notes and other evidences of Claims will represent only the right to receive the Distributions contemplated under the Plan.

## J.  **No Recourse**

No Person entitled to receive a payment or Distribution under the Plan will have any recourse against the Estate, the Debtor and its professionals, representatives, successors, and

assigns, or their respective property and assets, other than the right to receive Distributions in accordance with the terms of the Plan.

**K.     No Admissions**

Notwithstanding anything to the contrary in the Plan, if the Plan is not confirmed, is revoked, or otherwise the Effective Date does not occur, the Plan will be null and void, and nothing contained in the Plan or the Disclosure Statement will: (a) be deemed to be an admission by the Debtor with respect to any matter discussed in the Plan or the Disclosure Statement, including liability on any Claim or the propriety of any Claim's classification; (b) constitute a waiver, acknowledgement, or release of any Claims, Interests, or any Causes of Action held by the Debtor or the Estate; or (c) prejudice in any manner the rights of the Debtor, the Estate, or any creditors or equity security holders in any further proceedings.

**L.     Severability of Plan Provisions**

If, before confirmation, the Bankruptcy Court holds that any Plan term or provision is invalid, void, or unenforceable, the Bankruptcy Court may alter or interpret that term or provision so that it is valid and enforceable to the maximum extent possible consistent with the original purpose of that term or provision.  That term or provision will then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the Plan's remaining terms and provisions will remain in full force and effect and will in no way be affected, impaired, or invalidated.  The Confirmation Order will constitute a judicial determination providing that each Plan term and provision, as it may have been altered or interpreted in accordance with this Article, is valid and enforceable under its terms.

**M.     Transfer Tax Exemption**

Pursuant to § 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any notes or securities under the Plan, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, any deeds, deeds of trust, mortgages, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan, including the sale of Property, and any deed of trust evidencing any loan obtained to purchase the Property, shall not be subject to any stamp tax or other similar tax, including, but not limited to, transfer and recordation tax on the sale of the Property.

**N.     Governing Law**

The rights and obligations arising under the Plan and any agreements, contracts, documents, or instruments executed in connection with the Plan will be governed by, and construed and enforced in accordance with, District of Columbia law without giving effect to District of Columbia law's conflict of law principles, unless a rule of law or procedure is supplied by: (a) federal law (including the Bankruptcy Code and the Bankruptcy Rules); or (b) an express choice-of-law provision in any document provided for, or executed under or in connection with, the Plan terms.

**O.**     **Retention of Jurisdiction**

Under Bankruptcy Code §§ 105(a) and 1142, and notwithstanding entry of the Confirmation Order, substantial consummation of this Plan and occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, and related to, the Case, this Plan and the Plan Documents to the fullest extent permitted by law, including, among other things, jurisdiction to:

1.    Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim, the resolution of any objections to the allowance or priority of Claims or Interests and the determination of requests for the payment of claims entitled to priority under Bankruptcy Code § 507(a)(2), including compensation of any reimbursement of expenses of parties entitled thereto;

2.    Hear and determine all applications for compensation and reimbursement of expenses of Professionals under this Plan or under Bankruptcy Code §§ 330, 331, 503(b), 1103, and 1129(a)(4); provided, however, that from and after the Effective Date, the retention and payment of the fees and expenses of the Professionals of the Debtor may be made in the ordinary course of business without the approval of the Bankruptcy Court;

3.    Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

4.    Effectuate performance of and payments under the provisions of this Plan;

5.    Hear and determine any and all adversary proceedings, motions, applications and contested or litigated matters arising out of, under or related to the Case, this Plan, or any Plan Document;

6.    Enter such orders as may be necessary or appropriate to execute, implement or consummate the provisions of this Plan and all contracts, instruments, releases and other agreements or documents created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

7.    Hear and determine disputes arising in connection with the interpretation, implementation, consummation or enforcement of this Plan, including disputes arising under agreements, documents or instruments executed in connection with this Plan;

8.    Consider any modifications of this Plan, cure any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

9.      Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with implementation, consummation, or enforcement of this Plan or the Confirmation Order;

10.     Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified or vacated;

11.     Hear and determine any matters arising in connection with or relating to this Plan, the Disclosure Statement, the Confirmation Order, the Plan Documents or any contract, instrument, release or other agreement or document created in connection with this Plan, the Disclosure Statement, the Confirmation Order, or any Plan Document;

12.     Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Case;

13.     Except as otherwise limited herein, recover all Assets of the Debtor and property of the Estate, wherever located;

14.     Hear and determine matters concerning state, local and federal taxes in accordance with Bankruptcy Code §§ 346, 505 and 1146;

15.     Hear and determine motions for Bankruptcy Rule 2004 examinations;

16.     Hear and determine all matters related to the property of the Estate from and after the Confirmation Date;

17.     Hear and determine any Causes of Action;

18.     Hear and determine all disputes involving the existence, nature or scope of the injunctions, indemnification, exculpation and releases granted pursuant to this Plan;

19.     Hear and determine all matters related to the property of the Estate from and after the Confirmation Date;

20.     Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

21.     Enforce all orders previously entered by the Bankruptcy Court;

22.     Dismiss the Case; and

23.     Enter a final decree closing the Case and reopening the Case thereafter.

If the Bankruptcy Court abstains from exercising jurisdiction, or is without jurisdiction, over any matter, this Article will not affect, control, prohibit, or limit the exercise of jurisdiction by any other court that has jurisdiction over that matter.

**P.**  **Successors and Assigns**

The rights, benefits, and obligations of any Person referred to in this Plan will be binding on, and will inure to the benefit of, any heir, executor, administrator, successor, or assign of that Person.

**Q.**  **Saturday, Sunday, or Legal Holiday**

If any payment or act under the Plan should be required to be made or performed on a day that is not a Business Day, then the payment or act may be completed on the next succeeding day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

**R.**  **Plan Modification**

Subject to the restrictions set forth in Bankruptcy Code § 1127, the Debtor reserves the right to alter, amend, or modify the Plan before it is substantially consummated.

**S.**  **Withdrawal of the Plan**

The Debtor reserves the right to withdraw the Plan before the Confirmation Date.

**XI.**  **RECOMMENDATIONS AND CONCLUSION**

The Debtor, as the proponent of the Plan, believes that the Plan maximizes recoveries to all Creditors entitled to receive distributions on their Allowed Claims and, thus, is in its best interests.  The Plan as structured, among other things, allows creditors to be paid in full, and minimizes delays in recoveries to all Creditors entitled to receive distributions on their Allowed Claims.

Dated:  June 12, 2023    Respectfully submitted,

/s/ *Justin P. Fasano*

Janet M. Nesse (D.C. Bar 358514)
Justin P. Fasano (DC Bar MD21201)
McNamee Hosea
6404 Ivy Lane, Suite 820
Greenbelt, MD 20770
(301) 441-2420
jnesse@mhlawyers.com/ jfasano@mhlawyers.com
Counsel for Jefferson-11th Street, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2023, a copy of the foregoing was filed and served via the

Court's Electronic Case Filing System on all parties receiving such notification.


/s/ *Justin P. Fasano*
Counsel