The order below is hereby signed.

Signed: November 12 2026

Elizabeth L. Gunn
U.S. Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| **In re:**<br>**Jefferson-11th Street, LLC,**<br>**Debtor.** | **Case No. 22-00059-ELG**<br><br>**Chapter 11** |

**<u>MEMORANDUM OPINION ON MOTION TO DETERMINE JURISDICTION</u>**

The question before the Court is whether a debtor's challenge of the classification of real property by the District of Columbia Office of Tax and Revenue ("DCOTR") under D.C. Code § 47-813 as a Class 2, 3, or 4 property with an associated increased tax rate under D.C. Code § 47-814 requires the Court to make a determination of an ad valorem tax that it is prohibited from making under Bankruptcy Code § 505(a)(2)(C).[1] The issue was raised by the *Motion for a Determination that this Honorable Court Lacks Subject Matter Jurisdiction to Determine Debtors Tax Liability Involving District Claim Nos. 6-3 and 6-5* (the "Jurisdiction Motion") (ECF No. 271) filed by the District of Columbia Office of Attorney General in response to Jefferson-11 Street, LLC's (the "Debtor") objection (the "Original Objection") (ECF No. 174) to the portion of Proof of Claim 6-3 filed by DCOTR for unpaid real property taxes associated with the classification of the Debtor's former property as "vacant." After a period of negotiation between the parties in

[1] Unless specified otherwise, all chapter and code references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532 et seq.

which they resolved other matters,[2] DCOTR filed amended Proof of Claim 6-5 (the "Amended Claim") solely for unpaid real property taxes. After an initial hearing on the Original Objection and the filing of the Amended Claim, the Debtor filed its *Revised Objection by the Debtor in Possession to the Claim of the District of Columbia (Claim 6-5 Filed 12/06/22)* (the "Claim Objection") (ECF No. 288), limited solely to DCOTR's classification of its real property as Class 3 vacant and resulting higher real estate taxes as set forth in the Amended Claim.

On August 7, 2026, the Court held an evidentiary hearing (the "Hearing") on the Jurisdiction Motion. At the conclusion of the Hearing, the Court authorized the parties to brief the question of whether the classification of real property made pursuant D.C. Code § 47-813, resulting in higher tax rates under D.C. Code § 47-812, fall within the definition of ad valorem taxes as used in § 505(a)(2)(C). On September 23, 2026, the Court issued an oral ruling (the "Oral Ruling") setting forth its findings and conclusions that it has subject matter jurisdiction over the Claim Objection because the classification under D.C. Code § 47-813 relies on the condition of property instead of the value, and thus, the real estate taxes associated with the higher rate due to classification do not constitute ad valorem taxes under § 505(a)(2)(C). This Memorandum Opinion documents the Court's Oral Ruling on the question of subject matter jurisdiction. To the extent there is any inconsistency or conflict with the Oral Ruling, this Memorandum Opinion shall control.

## I. Background

The facts material to a determination on the Jurisdiction Motion are undisputed. The Debtor was the owner of a parcel of real property (the "Property"), which was vacated and in various

[2] The DCOTR's Proof of Claim 6-3 originally included additional, unrelated taxes to which the Debtor also objected, but which were resolved consensually between the parties. *See, District of Columbia's Praecipe Withdrawing District of Columbia Office of Tax and Revenue's Proof of Claim for Unincorporated Business Franchise Taxes* (ECF No. 263).

stages of construction between tax year 2021 through the petition date on March 31, 2022.[3] The Debtor paid the tax year 2021 and 2022 real property taxes associated with a Class 1 designation on the Property, leaving a balance of the difference (the "Delta") between taxation at the Class 1 rate ($0.85 per $100 of assessed value) and taxation at the Class 3 rate ($5 for each $100 of assessed value). Although not evident from the face of the Amended Claim, a detailed review of the attachments, as well as the arguments of the parties at the Hearing, confirms that the amounts stated in the Amended Claim represent the Delta. The Claim Objection alleges that the classification of the Property as Class 3 was improper and seeks to have the Amended Claim disallowed in full.

Contemporaneously with the Jurisdiction Motion, DCOTR also filed to stay the hearing on the merits of the Claim Objection pending resolution of the question of the Court's jurisdiction over the Claim Objection. *Motion of the District of Columbia to Stay This Proceeding Involving District of Columbia Claim Nos. 6-3 and 6-5 Including Discovery, Until it is Determined that Subject Matter Jurisdiction Exists* (the "Stay Motion") (ECF No. 267). Although an order on the Stay Motion was not entered, the Court nevertheless limited the scope of the Hearing to the issues raised in the Jurisdiction Motion, continued any consideration of the merits of the Claim Objection, and limited its Oral Ruling to the question of the Court's subject matter jurisdiction on the Amended Claim.

## II. Analysis

### *A. Section 505(a)(2)(C) Applies Solely to Ad Valorem Taxes*

A BAPCPA revision to the Bankruptcy Code[4] § 505(a)(2)(C) removed a bankruptcy court's ability to determine "the amount or legality of any amount arising in connection with ad

---

[3] The Property was sold by order of the Court on October 16, 2023. *See Reorganized Debtor's Report of Sale* (ECF 245). As set forth in the Settlement Statement (ECF No. 245-1), funds from the sale were escrowed for payment of the disputed taxes.

[4] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23.

valorem tax on real or personal property of the estate, if the applicable period for contesting or redetermining that amount under applicable nonbankruptcy law has expired." 11 U.S.C. § 505(a)(1), (a)(2)(C). By adding § 505(a)(2)(C) to the Code, Congress expressly intended to limit the types of ad valorem taxes a debtor was able to contest in bankruptcy court. *See Dubov v. Read*, 692 F.3d 1185, 1191 (11th Cir. 2012). The provision aimed to address concerns of state and local taxing authorities that § 505(a)(1) gave bankruptcy courts the discretion to determine otherwise untimely objections to prepetition ad valorem tax liabilities. *See In re CM Reed Almeda 1-3062, LLC*, No. 13-19117-gs, 2016 Bankr. LEXIS 2559, at *11-12 (Bankr. D. Nev. May 31, 2016) (quoting Carl M. Jenks, *The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005: Summary of Tax Provisions*, 79 AM. BANKR. L.J. 893, 896 (2005)). Prior courts have considered the definition of the phrase "has expired" and whether § 108(a) tolls or extends the time for challenging taxes otherwise provided for in § 502(a)(2)(C). *See, e.g.*, *Dubrov v. Read (In re Read)*, 692 F.3d 1185, 1189-92 (11th Cir. 2012); *In re Vill. at Oakwell Farms, Ltd.*, 428 B.R. 372, 379-380 (Bankr. W.D. Tex. 2010); *In re CM Reed Almeda 1-3062, LLC*, 2016 Bankr. LEXIS 2559, at *11-14 (Bankr. D. Nev. May 31, 2016); *In re Breakwater Shores Partners, L.P.*, No. 10-61254, 2012 Bankr. LEXIS 1454, at *7-9 (Bankr. E.D. Tex. Apr. 5, 2012); *In re ATA Airlines, Inc.*, No. 08-03675-BHL-11, 2010 Bankr. LEXIS 3571, *6-9 (Bankr. S.D. Ind. Oct. 4, 2010). Another court has considered the difference between determination of an ad valorem tax and the allowance of a tax claim that is ad valorem in nature. *See In re Slade-Lanier*, No. 12-13436 and No. 13-14328, 2014 Bankr. LEXIS 2485, at *16-17 (Bankr. N.D. Ohio June 6, 2014) ("Section 505 precludes a bankruptcy court from determining the amount of an ad valorem tax, but it does not prevent a bankruptcy court from determining the amount of a tax claim, including tax claims which are ad valorem in nature. The word 'claim' does not appear in § 505(a)(2)(C). The creditors cite no court which has adopted their interpretation of § 505(a)(2)(C), and the plain language of 11 U.S.C. §

505(a)(2)(C) refers to determining the amount owed on an ad valorem tax, not determining the allowed amount and treatment of a tax claim."). However, it appears the definition of "ad valorem tax" for purposes of § 505(a)(2) is a question of first impression.

The term "ad valorem" is not defined in the Bankruptcy Code or the D.C. Code. However, Black's Law Dictionary defines ad valorem as "according to value." *Ad Valorem*, BLACK'S LAW DICTIONARY (12th ed. 2024). Thus, ad valorem taxes are those assessed according to the value of real or personal property. *See, e.g.*, *In re Meggitt*, No. 17-30029, 2018 Bankr. LEXIS 993, at *10 (Bankr. N.D. Ohio March 30, 2018). Ad valorem taxes are calculated by applying a tax rate (i.e., $X per $Y of tax assessed value) to the tax assessed value of property. *See, e.g.*, *Public Serv. Co. v. FERC*, 91 F.3d 1478, 1485 (D.C. Cir. 1996) (explaining "calculation of the [ad valorem] tax is based on the present value of" the asset at issue, not the change in, or the delta of, the asset over time). Stated otherwise, an ad valorem tax is a tax levied based solely on the tax assessed value of the property. As discussed further *infra*, the Debtor is challenging neither the District's valuation of the Property nor the applicability of the District's base tax rate (Class 1) to such valuation. The Debtor's sole challenge is the District's taxation of the Property at a higher rate due to its condition.

*B. The District of Columbia's Classification of Properties for the Application of Higher Tax Rates is Not an Ad Valorem Tax*

The District of Columbia has established a multifaceted tax scheme that relies in part on the tax assessed *valuation* of property, but also imposes different tax rates based on the *condition* of property, subject to the grant of certain "exemptions" from such higher rates. *See generally* D.C. CODE § 47-813 (2026); *id.* § 42-3131.05(3) (2026) (definition of "blighted vacant building"); *id.* § 42-3131.05(14)(A) (definition of "vacant building"). A vacant building is a property that is "improved by a building that is not lawfully occupied on a regular or habitual basis by the owner or a tenant or other person having permission of the owner . . . ." *Id.* § 42-3131.05(14)(A). A blighted vacant building is a "vacant building that is determined by the Mayor to be in such a

condition as to pose a danger to the health, safety, or general welfare of the community." *Id.* § 42-3131.05(3) (2026). Accordingly, as defined by the D.C. Code, the classification of a building depends solely on its physical character and use, not its valuation.

The condition of a property is certainly taken into account when determining its tax assessed value. *See* D.C. Code § 47-820(a)(3) ("The assessed value for all real property shall be the estimated market value of such property as of the valuation date, as determined by the Mayor. . . . The Mayor shall take into account any factor that may have a bearing on the market value of the real property, including . . . reproduction cost less accrued depreciation because of age, condition, and other factors. . ."); D.C. Code § 47-820(b-1) (Providing that all real property will be assessed at least every three years unless the assessment is revised as a result of, *inter alia*, "(F) A change in the classification of the real property. . ." or "(G) A substantial change occurs to the physical make up of the real property."). However, the D.C. Code provides separately for the establishment of tax rates, set forth in D.C. Code § 47-812, and the establishment of different classes of property for the "the purposes of levying taxes" under D.C. Code § 47-813. Thus, while the property valuation for an ad valorem tax does not change, the rate at which the property's value is taxed depends entirely upon on its classification, which in turn is solely determined by the condition and use thereof. *See, e.g.*, D.C. CODE § 47-813(a) ("For the purpose of levying taxes on real property in the District of Columbia, the Council may establish different classes of real property.); *Id.* § 47-813(c-8)(2)(A) ("Class 1 Property shall be comprised of residential real property that is improved and its legal use . . . is for nontransient residential dwelling purposes. . . ."). During the period relevant herein, that classification was set by D.C. Code § 47-813(c-8), which in turn incorporated D.C. Code § 42-3131.16 and D.C. Code § 42-3131.17[5] for the description and determination of vacant or blighted vacant status. The statutorily required

[5] D.C. CODE § 42-3131.17 (repealed 2025).

considerations applied for the designation of a property as vacant or blighted vacant all depend upon the condition or use of the property; there is no mention of property value at any point in the relevant statutes.[6]

An examination of other provisions of the D.C. Code supports the conclusion that real property classification and real property ad valorem taxation are separate and distinct legal determinations. For example, D.C. Code § 5025-11 provides for the establishment of a "parking district" in the District of Columba based upon its metes and bounds, as well as the use of the real property located within the proposed parking district. *See, e.g.*, D.C. CODE § 5025-11(b). Subsection (d) goes on to state that in conjunction with the recommendation for the establishment of a parking district, the required financial plan for funding the facility may include "[a]n ad valorem real property tax rate to be imposed on Class 3, Class 4, and Class 5 real property[.]" *Id.* § 5025-11(d)(2). As such, the classification of the real property as a parking district is separate and distinct from the rate of taxation to be applied to the value thereof as a result of said classification.

More directly, D.C. Code § 47-813 further bolsters the two-part analysis:

> Commencing with the property tax year beginning July 1, 1980, and ending June 30, 1981, and for each tax year thereafter, when the uses of real property fall within more than 1 of the classes enumerated in this section, the total assessed value of the property shall be apportioned into the appropriate classes of real property as defined in this section, and each of the areas resulting from the apportionment shall be taxed at the appropriate real property tax rate.

In application, the value of the property is established initially. Then, if the uses of the property cross classes, different rates are applied to each portion of the value. Notably, the value is determined first, and only after that valuation occurs, is the condition of the property considered for the purposes of the applicable rate of taxation. Once again, it is the *condition*, not the *value*, of

---

[6] In 2025, the District of Columbia passed new standards for the determination of vacant and blighted vacant status. Although not applicable herein, nowhere in the new D.C. Code § 42-3131.05(b) is the value of the property mentioned as a relevant consideration.

the property that results in a different rate of taxation. The *valuation* is ad valorem. The higher rate, however, is not a tax assessed due to the value, but an increase in the rate due to the condition.

*C. The Increased Tax Rate Due to Classification is Similar to an Excise Tax*

The Debtor argues that the stepped-up tax rates for vacant and blighted vacant properties operate as excise taxes, assessed due to the condition and use, not the value thereof. Much as "ad valorem" is not defined in the Code, neither is the word "tax." The Supreme Court has defined taxes as "those pecuniary burdens laid upon individuals or their property, regardless of their consent, for the purpose of defraying the expenses of government or of undertakings authorized by it." *See New York v. Feiring*, 313 U.S. 283, 285 (1941). Taxes may be levied notwithstanding any benefit to the payor and impose the obligation solely on the ability to pay, the ownership of property, or income. *Nat'l Cable Television Ass'n, Inc. v. United States*, 415 U.S. 336, 340 (1974). A tax is a charge that generally does not correlate to any particular benefit to the payor. *Trs. of the Trism Liquidating Trust v. IRS*, 311 B.R. 509, 514 (B.A.P. 8th Cir. 2004) (citing *Coal. for Fair and Equitable Regul. of Docks on the Lake of the Ozarks v. Fed. Regul. Comm'n*, 297 F.3d 771, 778 (8th Cir. 2002)); *Donovan v. Washington Metropolitan Area Transit Authority*, 614 F. Supp. 1419, 1421 (D.D.C. 1985) ("[S]everal other cases indicate that an involuntary payment is a tax when it is assessed upon persons or property in order to raise general revenue to defray the public expense.") (citations omitted); *Thomas v. Network Solutions*, No. 97-2412 (TFH), 1998 U.S. Dist. LEXIS 1208, at *8-9 (D.D.C. Feb. 2, 1998) ("The Supreme Court and other courts have defined a tax as a payment which is arbitrarily imposed for some public purpose, whereas a fee is payment for a voluntary act, such as requesting a permit, that goes to defray the expenses of regulating that act."). Clearly, an ad valorem tax is imposed upon the value of property owned without regard to the benefit of ownership.

In contrast, an excise tax has been defined as "an indirect tax, not one directly imposed upon persons or property but imposed on the performance of an act, the engaging in an occupation, or the enjoyment of a privilege." *In re Voightman*, 239 B.R. 380, 383 (B.A.P. 8th Cir. 1999); *Murphy v. IRS*, 493 F.3d 170, 181 (D.D.C. 2007) ("[D]irect taxes are laid upon one's 'general ownership of property,' . . . As contrasted with excise taxes laid 'upon a particular use or enjoyment of property or the shifting from one to another of any power or privilege incidental to the ownership or enjoyment of property); *Hager v. Fed. Nat'l Mortg. Ass'n*, 882 F. Supp. 2d 107, 108, 112 (D.D.C. 2012). As such, the payor must pay the "tax" or "fee" to receive a benefit or privilege that would not otherwise be available to it. Generally, the scheme is designed to subsidize the costs of the benefits obtained. *See id.*; *Trism Liquidating Trust*, 311 B.R. at 514. An excise tax is not a voluntary obligation, as it is imposed upon every party or property that falls within the parameters of the code establishing it. However, the benefits of the monies collected therefrom are not limited to those who pay the tax. *See Trism Liquidating Trust*, 311 B.R. at 515.

The term excise tax thus "has a 'broad definition,', essentially encompassing any tax that is 'indirectly assessed'; that is, any tax 'that is not directly imposed upon people or property' but is instead 'imposed upon a particular use of property' or upon the exercise of a 'right or privilege.'" *Rizzo v. Mich. Dep't of Treasury*, 741 F.3d 703, 706 (6th Cir. 2014) (internal citations omitted) (quoting *In re Nat'l Steel Corp.*, 321 B.R. 901, 909 (Bankr. N.D. Ill. 2005)); *see also Boston Reg'l Med. Ctr, Inc. v. Mass. Div. of Health Care Fin. & Pol'y*, 365 F.3d 51, 65 (1st Cir. 2004) (; *In re Suburban Motor Freight, Inc. (Suburban I)*, 998 F.2d 338, 340 n.3 (6th Cir. 1993); *In re Nat'l Steel Corp.*, 321 B.R. 901, 909 (Bankr. N.D. Ill. 2005); *New Neighborhoods, Inc. v. W. Va. Workers' Compensation Fund*, 886 F.2d 714, 719 (4th Cir. 1989). "[T]he Supreme Court has consistently held, almost from the foundation of the government, that a tax imposed upon a particular use of property or the exercise of a single power or property incidental to ownership, is

an excise tax." *Nat'l Steel Corp.*, 321 B.R. at 909 (internal quotations omitted) (quoting *Bromly v. McCaughn*, 280 U.S. 124 (1929)). The availability of statutory exemptions from the application of an excise tax does not change its nature; rather, it recognizes a legislative policy decision to exempt certain classes of users from the obligation. *Trism Liquidating Trust*, 311 B.R. at 515.

Applying this standard to the increased tax rates due to the classification of property, it is clear that (i) there is an involuntary burden imposed by the authority of the legislature to properties that meet vacant (Class 3) or blighted vacant (Class 4) status; (ii) the owner of a property declared vacant or blighted vacant by the District of Columbia based upon the condition of the property has an obligation to pay an increased tax rate as a result of the classification; (iii) that heightened tax rate is being levied due to the vacant or blighted vacant status of the Property, not the value of the property; and (iv) any exemptions from the higher rates are legislative policy decisions related to the condition of the property. The Class 3 and Class 4 tax rates are imposed upon owners of real property in the District of Columbia based upon the owner's chosen use (or arguably, misuse) of the same. It is the property owner's choice to maintain real property in such a state so as to meet the definition of vacant or blighted vacant status that results in the higher rate, not the value of the property itself. Therefore, the Court finds that while the base level of real property taxation in the District is an ad valorem tax, the increased taxes charged by the District as a result of the use and condition of the Property fall squarely within the definition of an excise tax, which the Court has jurisdiction to review under § 505(a).

## III. Conclusion

For the reasons stated herein and in its Oral Ruling, the Court finds that the Claim Objection is not asking the Court to determine "of an amount arising in connection with an ad valorem tax[,]" as is excluded under § 505(a)(2)(C), but instead is a challenge to an excise tax levied upon the

Debtor due to the condition of the Property. Therefore, the Court has jurisdiction pursuant to § 505(a) to hear and determine the merits of the Claim Objection.

[Signed and dated above.]

Copies to: Debtor, recipients of electronic notice.